FRANK W. BEERS *vs.* EMMA J. NARRAMORE AND OTHERS.

New Haven & Fairfield Cos., June T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

A testator gave to his son *F* "the life use of the Old Mill Quarry, for quarrying purposes," and by a later section, after creating a trust fund out of the residue of his property, provided that, after the death of *F*, " the Old Mill Quarry property " should become a part of the trust

estate. The Old Mill Quarry property was a tract of about four acres, and the Old Mill Quarry was a quarry upon a part of it. Held that, taking both provisions of the will together, the life use given to *F* was of the whole tract and not of the quarry alone.

The testator gave the residue of his estate to a trustee, the "profits and income" to be paid quarterly, one third to his widow, one third to his son *F*, and one third to his daughter *E*, to belong to them absolutely, and after the widow's death one half to each of the two children; with a provision that at the death of the son his share of the income should go, one third to his "widow" for life or until she married again, and the rest to his children, to hold absolutely, and the same as to his daughter and her children, with a gift over of the whole estate remaining after the life estate, one half to the heirs of his son and one half to the heirs of his daughter. The will also gave the trustee the right, when he should deem it for the best interest of the estate, from time to time to sell any portion of the property for the "improvement and benefit of the remainder." The testator left a widow and the two children mentioned, the son being thirty years of age, with a wife twenty-eight years of age and two children, and the daughter being forty years of age and having five children. Held:—

1. That by the "widow" of his son the testator intended the wife of his son then living, and not any future wife whom he might leave as his widow.

2. That the term "heirs," in the gift over of the remainder, was used in its ordinary sense, and did not mean children.

3. That the gift over was therefore void as contravening the statute against perpetuities.

4. That the remainder became intestate estate.

5. That if either the son should die leaving no children or widow, or the daughter, leaving no children, the share of either in the income would not go to increase the share of the other in it, or accumulate and be added to the principal, but a proportionate part of the principal of the trust fund would be divested of the trust and become distributable as intestate estate.

6. That by the term "profits and income" the testator intended only income.

7. That the power of sale given the trustee was a personal one, requiring no action of the probate court, to be used when the sale would in his judgment be for the best interest of the estate; but that the power had a narrow compass and should be sparingly used.

[Argued June 2d—decided June 19th, 1891.]

SUIT to obtain a construction of a will; brought to the Superior Court in Fairfield County, and reserved, upon a finding of the facts, for the advice of this court.

*D. Davenport* and *W. H. O'Hara*, for the plaintiff.

*S. Judson, Jr.*, for the defendants.

FENN, J.  This is a suit brought to obtain a judicial construction of the last will of Wheeler Beers, which was reserved for the advice of this court.  The clauses of the will material to be considered are the following:—

"3. I give and bequeath to my son, Frank W. Beers, a life use of the Old Mill Quarry, for quarrying purposes, said gift being a consideration and payment for his own personal services as executor and trustee of my estate, the same to be for his use and benefit during his natural life."

"5. I give, devise and bequeath all the rest and residue of my property of every description, of whatsoever the same may consist, or wheresoever the same may be located, real, personal or mixed, either legally or equitably owned by me, to my son, Frank W. Beers, in trust, to be improved and kept intact so far as is profitable and for the best interest of my estate, to be used for the following purposes and persons' benefit:—The profits and income of said property shall be distributed in quarterly payments in each and every year, as follows, to wit:—

"6. I give and bequeath one third of the above said income of said estate, to my beloved wife, Emily Beers, to have and to hold the same absolutely to her and her heirs and assigns forever.

"7. I give and bequeath one third of said income of my estate to my daughter, Emma Jane Narramore, to have and to hold the same absolutely to her and her heirs and assigns forever.

"8. I give and bequeath the remaining one third of the income of the said estate to my son, Frank W. Beers, to have and to hold the same absolutely to him and his heirs and assigns forever."

"11. At the death of my son, Frank W. Beers, I will that the Old Mill Quarry property shall become a part of the aforesaid trust estate, and subject to the same conditions, stipulations and provisions of said trust estate.

"12. At the death of my beloved wife, Emily Beers, I

give and bequeath the income of said trust estate to my son Frank W. Beers and my daughter Emma J. Narramore, share and share alike, the income of said estate to be divided between my son and my daughter equally, to have and to hold the same absolutely to them and their heirs and assigns forever.

"13. At the death of my son, Frank W. Beers, I give and bequeath his share of the income of said trust estate, as follows:—One third to his widow so long as she shall remain unmarried, and should his widow remain unmarried then she shall enjoy the said one third during her natural life; and the balance of his share I will to his children; and further, should his widow re-marry, or die before distribution of said trust estate, I then will that the whole of said Frank W. Beers's share shall descend to his children, to have and to hold the same absolutely to them and their heirs and assigns forever.

"14. At the death of my daughter, Emma J. Narramore, I give and bequeath her share of the income of said trust estate to her children, to have and to hold the same absolutely to them and their heirs and assigns forever.

"15. I will that my trustee, Frank W. Beers, shall have power, from time to time, when it shall be deemed for the best interest of my estate, to sell any part or parts thereof for the improvement and benefit of the remainder.

"16. After the death of my beloved wife, Emily Beers, and my son, Frank W. Beers, and my daughter, Emma J. Narramore, and the widow of my son, Frank W. Beers, or her re-marriage, I then give, devise and bequeath the whole of my estate remaining, of every description at that time, one half to the heirs of my son, Frank W. Beers, and the remaining one half to the heirs of my daughter, Emma J. Narramore, to have and to hold the same absolutely to them and their heirs and assigns forever."

The facts found by the court, so far as the same are material, are these:—The testator died September 1st, 1890, leaving a considerable estate, real and personal, and a widow, Emily Beers, aged sixty years, and two children, namely,

the plaintiff, who is the sole executor and trustee, and who is the child of said Emily, and Emma J. Narramore, the daughter of a now deceased wife of the testator. The plaintiff is thirty years of age, and has a wife aged twenty-eight, and two children. His sister, Mrs. Narramore, is forty years of age and has five children living. At, the decease of the testator, he was the owner of a considerable tract, near Old Mill Green, in the city of Bridgeport, which was known as the "Old Mill Quarry property," consisting of about four acres, upon a portion of which was a quarry known as the "Old Mill Quarry." This quarry is valuable for quarrying purposes, and the residue of the tract is valuable for building purposes, and when the quarry shall have become exhausted, by properly filling in the place from which the stone is removed, the same can also be made suitable and valuable for building lots.

It will be manifest that many questions concerning the proper construction, validity and effect of a will so peculiar in its provisions and phraseology as that under consideration, might arise, and many have indeed, as it is alleged, arisen, and are presented for our determination.

The first question for consideration relates to the proper construction of the third and eleventh paragraphs. What is meant by the expressions "Old Mill Quarry" and "Old Mill Quarry property," as used by the testator? Are they convertible and equivalents? And do the two clauses, taken together, vest a life estate by implication in Frank W. Beers?

It appears by the finding, which we have just quoted, that the expression, "Old Mill Quarry property," was the known designation of a certain entire tract of land of about four acres, belonging to the testator at the time of his decease, and that upon a portion of this was a quarry known as the "Old Mill Quarry." The third paragraph of the will, standing alone, would seem, with reasonable clearness, to indicate that the testator intended to give to his son only the use for life of the quarry proper, and for quarrying purposes solely. But although the language used, taken by

itself, is indicative of such intent, yet it is not so certain, direct, and unambiguous as to place it beyond the possibility of a different construction, in the light of the intent of the testator as gathered from the entire provisions of the will. On the other hand, by the use of the term "Old Mill Quarry property," in the eleventh section of the will, it seems manifest that the testator intended the entire property or tract, and the provision that the property should become part of the trust estate at the death of his son, seems to us strong evidence that the testator intended to dispose, and believed that he had, by the language previously used by him, disposed, of the use of the entire property during the life of the son ; evidence all the more cogent, since in paragraphs nine and ten, which we have not deemed it essential to quote at length, the testator had just devised over, in one instance to the trust, in the other to his daughter, property of which the life use was given to his wife by the second paragraph of his will. We think, therefore, that in full accord with the principles heretofore recognized and illustrated by this court in the cases of *Minor* v. *Ferris*, 22 Conn., 371, *Holbrook* v. *Bentley*, 32 id., 502, and *Peckham* v. *Lego*, 57 id., 553, it is our duty to hold that Frank W. Beers takes, by implication, a life estate in the entire tract. Such being our construction, it follows that the further question, whether the power of sale given to the trustee by the fifteenth section extends to the Old Mill Quarry property before the death of Frank W. Beers, must be answered in the negative.

We come now to the main questions in the case—those which relate to the validity of the trust. Are the provisions of the will in reference to this subject, or any of them, void as being in conflict with either the common law rule or the statute relating to perpetuities ? And if any of the provisions are void, what effect does such invalidity have upon the remaining provisions ?

In the order in which those questions are presented in the complaint, we are first called upon to consider the clauses in the thirteenth and sixteenth paragraphs which refer to " the

Beers *v.* Narramore.

widow of my son Frank." It is said that if by that expression the testator intended any person who at the death of Frank sustained to him the relation of wife, and thereby became his widow, then such person might not be his present wife, but some one not born, and whose father and mother were neither born at the time of the death of the testator, and that therefore the statute would be offended. It seems to us that we are spared the necessity of applying the law of perpetuities to such a remote contingency as is suggested by this possibility of the death or divorce of the present wife of Frank W. Beers, then the possibility that he should re-marry, then the further possibility that such wife should survive him, as in the course of nature it must be confessed she ought, if so young that neither her father nor mother were born at the time that her husband's father died, leaving his son, her husband, married and the father of two children. This we are fortunately spared, since we think the testator meant the same as if, instead of "widow," he had said "wife of Frank, if she survives him," and that the latter is fully an equivalent expression. Had this term been used, as there was then *in esse* a person fully answering to that description, and only one, such person must be understood as intended, although it is indeed possible that this person might die, and another person might afterwards, at a remote date, as suggested, be born, who in another generation might come to answer the same description. Suppose the language used had referred to the "son" of Frank, and at the time there was a son and only one, could it be successfully claimed that the testator did not mean to identify a certain individual, but to give either entirely to one, or to divide among many, of Frank's male issue thereafter born? It is quite evident from the whole will that the testator was all along and throughout thinking of living persons whenever expressing any specific purpose. Indeed, so exceptionally does this appear to be the case, that natural contingencies, such as the survival of his own widow after the death of either his own son or daughter, do not seem to have very clearly occurred to him, and it is utterly unlikely

that the testator had any other person than the present wife of Frank, younger than her husband, and the mother of his children, in his mind. Indeed it is only in the sixteenth clause of the will that any other than living persons known to the testator and sustaining to him present kinship or family relations appear to have been thought of. We therefore think that, by the language used, Mary B. Beers, the present wife of Frank W. Beers, was intended.

By the sixteenth clause of the will, after the death of the four persons named a devise over of the estate is made, one half to the heirs of the son Frank W. Beers and the remaining one half to the heirs of the daughter Emma J. Narramore. We think that by the word " heirs," as used in this connection, the testator must be held to have intended the usual signification ; not children merely. Not only is this to be presumed in the absence of evidence to the contrary, but so far is the remainder of the will from supplying such contrary evidence, as to lead irresistibly in support of the conclusion which we have stated. Not only was it probable that, at a time so remote as the falling in of the last of four lives, some of the descendants of the testator's children might be grandchildren, whose parents, perhaps born after the death of the testator, had died, and therefore who were not, as our court has construed the expression, immediate issue or descendants, but also the use of the word " children" in the three next preceding sections of the will, and indeed the use of the word " heirs " in connection with the word " children " in the same sections, demonstrate that the testator understood the full significance of each expression, and used the word " heirs " in the section with the clear understanding of its meaning and with the intent that it should carry such meaning. It follows, therefore, that this devise contravenes the statute and is void.

Being void, the question arises—what effect does it have upon the remainder of the trust provisions ? It will be observed that this is the ultimate provision concerning the disposition of the property. It relates solely to the disposal of the property after the termination of the trust. It

seems to us that none of the provisions of the trust are themselves thereby affected or invalidated. The controlling intention of the testator, as we read it in the language of the will, was to ensure the protection which the trust created would afford to the persons named, and also incidentally to the children of his son and daughter during the continuance of the trust. The devise over at the conclusion of the trust being void, the ultimate remainder is intestate estate, which may be distributed either presently, subject to the particular estates, or at. the termination of the same, the beneficial interest vesting in the heirs of the testator. But the trust itself, in none of its provisions, offends the statute or the common law rule of perpetuities, all the persons named being in life, or so far as after-born children are concerned, the immediate issue of persons in being at the death of the testator.

Another question is stated in the complaint, in these words:—" By virtue of the provisions of paragraphs six, seven, eight, twelve, thirteen and fourteen of the will, what interest in the income of said trust estate is attempted to be created in the various legatees named therein? Is it a gift of the respective shares of the income during the continuance of the trust estate absolutely to the two children of the testator, to descend by inheritance and distribution, at the death of each, to their children and the widow of Frank as heirs at law; or is it a gift of the shares of said income to Frank W. Beers and Emma J. Narramore for life respectively, with an absolute estate in said shares of the income in remainder to their children; or is it a gift of a life estate only in said shares of the income, to the children and widow of the said Frank and the children of the said Emma?"

We think that by paragraphs six, seven and eight the testator clearly intended to give to each of the persons named respectively, for their respective lives, the use of one third of the income.of the trust fund; and that the money so paid over to them quarterly, as provided, should belong to them absolutely; that is, as the testator expresses it, to them and their " heirs and assigns forever." We think

that, by paragraphs twelve, thirteen and fourteen, at the death of the testator's wife one moiety of the one third of the income bequeathed to the wife passed to the son Frank for life, and the other moiety to the daughter Emma for life ; in other words, and in effect, that there should thereafter be paid over to each of them one half, instead of one third, of the entire income of the trust estate. That at the death of Frank, his share of the income, whether then one third or one half, should be paid over, one third to his wife during her widowhood, and the balance to his children ; said payments and trust to continue until the last survivor of the four persons named—the widow, daughter, son and son's wife—shall have deceased, or the son's wife shall have previously re-married, when the same shall determine. In the event of the death of Frank W. Beers before the termination of the trust, leaving no widow or children surviving him, or of the death of said Emma J. Narramore before the termination of the trust, leaving no children surviving her, it seems to us that there is nothing in the will to indicate any intent that the share of the income to which said Frank or Emma, or the widow or children, would have been entitled, should either go to increase the share of income of any survivor, or be accumulated and added to the principal, to be divided at the termination of the trust, as the principal is directed to be divided, and that the proportionate amount of the principal of the trust estate would therefore, upon the happening of such event, be divested from the trust, and become the subject of immediate distribution and possession as intestate estate. In case the widow of the testator shall die after the death of either said Frank or Emma, leaving the other surviving her, the share of the income of the trust estate which would have belonged to such deceased person, had he or she survived the widow, was however, we think, intended by the testator to increase the share of the income continued to the widow and children of Frank or to the children of Emma, making the same, as we have before intimated, one half, instead of one third, of the whole income.

Two further questions remain which we will briefly consider. One relates to the meaning of the word " profits," in paragraph five. We are asked—" Is it synonymous with the word ' income ' in the same paragraph ? Does the employment of both words by the testator in said paragraph give the trustee the right to pay quarterly to the persons named anything more than what is usually regarded as income from trust property? "

By reference to the will it appears that in no other connection, when the subject of income is referred to, is any other or additional word used. Such reference is made in paragraph six — " the aforesaid income ; " in paragraph seven — " said income ; " in paragraph eight — " the income ; " so also in twelve, thirteen and fourteen. It seems manifest, therefore, that by the words " profits and income," in paragraph five, nothing more was intended than by the single word " income " in the other paragraphs. It was suggested by the plaintiff's counsel in argument that some considerable portion of the estate was of such a character as to render it probable that the testator might have used the term " profits " with some additional intent, but there is nothing in the complaint, or in the facts found, which bears upon the matter, and we see no reason to attach any additional weight to the word.

The remaining question concerns the power of sale given to the trustee by paragraph fifteen of the will. We are asked to say whether that paragraph means that the trustee shall have power to sell any part of the estate whenever he deems that the interest of the estate will be subserved thereby, or does it mean that he shall have that power whenever the court of probate or other authority shall so deem? And also what is meant by the clause " for the improvement and benefit of the remainder? "

It is very difficult to satisfactorily determine what was intended by this paragraph, and it is quite likely that the testator himself had no distinct idea or intent, but we are inclined to think that the power is a personal one, to be discharged by the trustee in the exercise of a sound discretion,

under the sole authority of the will, but that such power is only conferred, and can therefore only be exercised, in cases where, in the judgment of the trustee, such sale will be for the best interest of the estate, and in some way such sale and disposition will improve and benefit the remainder (using the word "remainder" in the sense of "residue") of the estate. We cannot say that it is not possible that such a condition might arise; as, for example, we do not know but a sale of some portion of the "Old Mill Quarry property" might be made for a purpose, the effect of which would tend to benefit the remainder. Such a power it seems to us has a narrow compass and should be sparingly used.

. Although this opinion has unavoidably become somewhat long, we have been relieved from the necessity of as full a discussion of some of the questions involved as would otherwise have seemed necessary, by virtue of what has already been said in recent cases, and especially in the very late opinion upon the second reservation of the case of *Leake* v. *Watson*, 60 Conn. 498.

The Superior Court is advised that Frank W. Beers takes, by implication, a life estate in the entire tract of four acres known as the "Old Mill Quarry property;" that by the widow of his son Frank W. Beers, the testator intended the present wife of said Frank should she survive her husband; that by the word "heirs" as used in the sixteenth clause of his will, the testator intended the natural meaning and significance of that expression and did not mean children; that therefore the remainder after the conclusion of the trust estate is void, but that the trust is valid; that the words "profits and income," as used in the fifth paragraph, mean no more than the word "income" alone as used in the remaining paragraphs; and that the power of sale given in paragraph fifteen is personal, to be discharged by the trustee, in the exercise of a sound discretion, whenever the conditions prescribed are by him found to exist.

In this opinion the other judges concurred.