HENRY D. BEACH, TRUSTEE, *vs.* FRANK W. BEERS.

Third Judicial District, Bridgeport, October Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, JS.

A testator gave to his son *B* a life estate in Blackacre, and by a later clause gave to him, in trust, "all the rest and residue" of his property "of every description, real, personal or mixed." A still later clause provided that upon *B's* death Blackacre should "become a part of the aforesaid trust estate." *Held* that notwithstanding the provision last quoted, *B*, as trustee, took a vested remainder in fee in Blackacre upon the death of the testator.

The devisee of a life estate, who is also testamentary trustee of the remainder interest, with a power of sale, is, by virtue of this union of titles in himself, in a position to sell and convey a title in fee to the property; and therefore a deed purporting to convey such a title, in fulfilment of the intention of the parties, is effective for that purpose.

If there is no separate sale or agreed valuation of the life estate, the life tenant has no right to withhold a portion of the avails of the sale as the estimated value of his life use, but is limited to the interest or income thereon, as it shall accrue, during his lifetime; while the

right to the custody and possession of the entire fund is in the testamentary trustee, or, if he be removed, in his successor, to the end that it may be preserved and turned over to the remaindermen upon the termination of the life estate.

A testamentary trustee of real estate has no power, as such, to contract to pay one of several life tenants a stated sum monthly, or to guarantee that such tenant's share of the rents or income shall equal that amount.

An innocent depositary of misappropriated trust funds, who receives and pays them out in good faith, at the direction and for the benefit of the depositor, without notice or knowledge of their trust character, does not thereby participate in the misappropriation or become liable to the trust estate for the sum so received and disbursed.

Ordinarily the purchaser of land which is sold and conveyed by a testamentary trustee, as well as the beneficiaries of the remainder interest, should be made parties to a suit involving the power of the trustee to make the sale and conveyance; but a new trial will not be granted for the failure to make them parties if the conclusion reached in nowise prejudices the rights of such persons.

The case of *Beers* v. *Narramore*, 61 Conn. 13, explained and limited.

Argued October 24th, 1907—decided March 5th, 1908.

ACTION by a testamentary trustee to recover the balance claimed to be due from his deposed predecessor in office, brought to the Superior Court in Fairfield County where successive demurrers to the original and amended answers were sustained (*Roraback* and *Gager, Js.*), and the cause was afterward tried to the court, *Reed, J.;* facts found and judgment rendered for the plaintiff for $11,437, and appeal by the defendant.   *Error in part.*

*John J. Phelan* and *John C. Chamberlain*, for the appellant (defendant).

*Robert E. DeForest*, with whom was *William H. Kelsey*, for the appellee (plaintiff).

HALL, J.    The plaintiff, by appointment of the Court of Probate of the district of Bridgeport, on the 25th of April, 1903, is the trustee of the estate of Wheeler Beers, who died in 1890.   The defendant is the son of said Wheeler

Beers, and was appointed trustee of said estate by his father's will, but was removed by said Court of Probate on the date first above named.

In paragraph 4 of the complaint, dated October 12th, 1904, and in the bill of particulars under said paragraph, the plaintiff charges the defendant with an indebtedness to the estate of $28,357.91. The item of such charge upon which the principal question in this appeal arises, is stated as "Cash received from sale of lot on North Avenue for schoolhouse site, $5,500." Said paragraph 4, as amended, alleges that the defendant, as trustee of said estate, made said sale to the city of Bridgeport, and a copy of a warranty deed dated July 23d, 1902, containing covenants binding the grantor, his heirs, executors and administrators, and purporting to convey a lot 200 feet square to the city of Bridgeport, is made a part of said paragraph and of the statement of said charge. It is executed by the defendant as "Trustee under will of Wheeler Beers," and contains this clause: "It being deemed by me as such trustee that such sale will be for the best interests of the estate of said Wheeler Beers, and will improve and benefit the remainder of said estate."

The defendant in his answer denies the allegations of paragraph 4 of the complaint, and further avers, in paragraph 6 of his amended answer, that the said lot so conveyed to the city of Bridgeport "is a part of the 'Old Mill Quarry property,' described in the will of Wheeler Beers"; in paragraph 7 of the answer, that the defendant "is the Frank W. Beers mentioned in said will"; in paragraph 9 of his "Amendment of Answer," that "by the terms of said will the defendant is entitled to the life use of the said lot . . . and is also entitled to the life use of all the money received therefrom, if said sale conveyed the fee"; and in paragraph 10 of said amendment, that "if said sale conveyed the fee the valued use of said defendant is $4,500, and he should be charged with the difference only between that sum and the amount received by him."

A copy of the will of Wheeler Beers, dated June 12th,

1889, and annexed to the amended answer, contains the following relevant dispositions and provisions: By the second clause is given to Emily Beers, the testator's wife, a life use of the home, No. 401 Broad Street (and the household furniture), being an unincumbered one half of a building, the other half of which also belonged to the estate but was mortgaged for $2,000. The third clause gives to the defendant "a life use of the Old Mill Quarry for quarrying purposes, said gift being a consideration and payment for his own personal services as executor and trustee of my estate, the same to be for his use and benefit during his natural life." By the fifth and several following clauses, after gifts to the defendant of certain articles of personal property, all the rest and residue of the estate is given to him "in trust, to be improved and kept intact so far as is profitable and for the best interests of my estate, . . . the profits and income" thereof to be distributed in quarterly payments in each and every year, one third each, to the testator's wife, to his daughter Emma Jane Narramore, and to the defendant. The eleventh section provides that at the death of the defendant the "Old Mill Quarry property [which was a tract of about four acres] shall become a part of the aforesaid trust estate, and subject to the same conditions, stipulations and provisions of said trust estate." The fifteenth section is as follows: "I will that my trustee, Frank W. Beers, shall have power from time to time, when it shall be deemed for the best interest of my estate, to sell any part or parts thereof for the improvement and benefit of the remainder." The sixteenth clause gives the estate to the heirs of Frank W. Beers and Emma Jane Narramore, after the death of Frank and of his widow, of his mother, and of his sister, Emma Jane Narramore. The seventeenth section appoints the defendant executor and trustee without bonds.

The plaintiff demurred to said paragraphs 6 and 7 of the answer, and to said "Amendment of Answer" containing paragraphs 9 and 10. The demurrer to paragraphs 6, 7 and 9, was upon the grounds, in substance, that they

contained no allegation that the defendant had only sold his life estate in the Old Mill Quarry property ; that it appeared from 'the facts alleged that the property sold belonged to the estate of Wheeler Beers, and that the defendant was accountable for the avails of said sale of it; and that even if the defendant was entitled to the life use of the avails of such sale, the plaintiff, as trustee, was entitled to the possession of the principal of said sum of $5,500. The demurrer to paragraph 10 was upon the ground, in effect, that it was defective in form, in that it failed to state in what way, or by what method, or upon what principle, said life use was valued at $4,500.

The court sustained the demurrer upon the grounds stated, and thus in effect held that the answer contained no allegation of a separate sale of the defendant's life estate in the schoolhouse lot, nor any allegation, in proper form, of a fixed or agreed valuation of such life estate by the parties to the sale, and that the facts properly alleged in paragraphs 5, 6, 9 and 10 of the answer did not relieve the defendant from liability to pay to the plaintiff the said sum of $5,500.

After the demurrer was sustained, the defendant further amended his answer by alleging that said sale of the schoolhouse lot was not made by him for the benefit and improvement of the remainder of the estate, but was made for the sole benefit of the defendant; and also filed a counterclaim alleging various items of indebtedness of the plaintiff, and said estate, to the defendant.

Upon the trial of the issues thus raised by the defendant's denial of paragraph 4 of the complaint, and by plaintiff's reply to the paragraphs of the answer not demurred to, and by his reply to the averments of the counterclaim, the defendant admitted an indebtedness to the estate, at the time of his removal as trustee, of $5,114.31, subject to such credits as he might be entitled to receive under his counterclaim, and that he had "appropriated and used for his own purposes the whole of said sum of $5,500," and had in no manner accounted for "any part of the same to

the estate." The court found said issues in favor of the plaintiff, except as to certain credits claimed in the counterclaim, and included in its judgment for the plaintiff said sum of $5,500, but without interest.

The trial court committed no error in sustaining the demurrer to the answer, and in rendering such judgment. The principal contentions of the defendant, made both in the court below and in this court, are these : 1. Although the defendant intended by his deed of July 23d, 1902, to convey to the city of Bridgeport the fee to the schoolhouse lot, he had no power to do so under his father's will, and by said deed actually conveyed only his life estate in said lot. 2. If by said deed the defendant conveyed the fee of the lot to the city, the plaintiff has no interest in said sum of $5,500 received by the defendant therefor, until after the defendant's death, and the defendant is entitled to the possession of said fund during his life. 3. If the defendant is accountable to the plaintiff for said sum, the value of the defendant's life estate in it should be deducted, and he should be liable for the remainder only.

Concerning the first of these claims, while it is conceded by the defendant that inasmuch as the grantor in the deed to the city, and the life tenant of the " Old Mill Quarry property," were the same person, and the deed by its terms actually conveyed the life estate and was also intended to convey the fee to the schoolhouse lot, yet it is argued that by his father's will the defendant had no power to convey the fee, since under section eleven of the will the " Old Mill Quarry property " did not become a part of the trust estate until the death of the defendant, and that this court had decided in the case of *Beers* v. *Narramore*, 61 Conn. 13, 22 Atl. 1061, that the defendant possessed no such power.

We find no sufficient support for either of these claims. Possibly the purpose of section eleven, as well as that of one other section of the will, was to make it clear that property in which a life estate was given was still to remain in the trust estate, after the death of the life ten-

ants. However that may be, the remainder in fee in the Quarry property is clearly given to the defendant as trustee, by the unequivocal language of the fifth section of the will, giving to him, in trust, "all the rest and residue of my property of every description, of whatsoever the same may consist or wheresoever the same may be situated, real, personal or mixed."

Certain of the several questions regarding the construction of this will, submitted to us in *Beers* v. *Narramore,* 61 Conn. 13, 22 Atl. 1061, related to the extent of the gift to this defendant by the language of the third clause, "a life use of the Old Mill Quarry for quarrying purposes," when taken in connection with the words "Old Mill Quarry property" used in the eleventh clause. Is it restricted to a right to remove stone from what was known as the "Old Mill Quarry," which was situated upon the four-acre tract known as the "Old Mill Quarry property"? Is it a gift of a life estate in the entire four-acre tract, and for other than quarrying purposes? If the quarry should become exhausted would the property become a part of the trust estate which could be sold during the defendant's life, free from the incumbrance of any life estate? These are, in substance, some of the inquiries propounded in that case. The opinion states that the inability of the trustee to sell the property before the death of Frank W. Beers *follows* from the conclusion of the court that the latter had a life estate in the entire tract. This means no more than that the trustee could convey a clear title to no part of the tract to the injury of the life estate, without the concurrence or consent of the life tenant. It is not suggested in that case that there was any question as to the power of the life tenant to sell his life estate, or of the trustee to sell the fee in remainder, if the latter should deem such a sale of the fee to be for the best interest of the estate and "for the improvement and benefit of the remainder," or of the power of the life tenant and trustee to convey, in concurrence, an unincumbered fee to the entire tract. At the close of the opinion it is suggested that conditions might

arise which would justify the trustee in selling some portion of the Old Mill Quarry property, under the power conferred by paragraph fifteen of the will, and the only advice given to the Superior Court respecting the power of the trustee to sell, was that " the power of sale given in paragraph fifteen is personal, to be discharged . . . whenever the conditions prescribed are found by him to exist." The decision does not conflict with our present conclusion that, having found that the prescribed conditions did exist, the trustee had the power to convey the fee of the schoolhouse lot to the city of Bridgeport.

The mere fact that the defendant would have been entitled to the actual possession, during his life, of the schoolhouse lot, had it not been sold, does not entitle him to the possession of the principal of the fund for which it was sold. Having, both as life tenant and as trustee, consented to the conversion of the land into money, he is entitled only to the interest upon or income from the principal of the fund thus substituted for the land; *Sedgwick* v. *Taylor*, 84 Va. 820, 6 S. E. 226 ; and having been removed as trustee, he is required to pay over that principal to his successor (General Statutes, § 372), and to make good any deficit. *Peck* v. *Smith*, 16 R. I. 260, 15 Atl. 312.

As there was no separate sale or agreed valuation of the defendant's life estate in the land sold, but simply a substitution, by the life tenant and trustee, of the $5,500 for the land sold, the defendant is not entitled to a deduction from that sum of the amount of an estimated value of his life estate in the land, or of an estimated value of his right to a life income from the sum received for it. It is the trustee, not the remaindermen, who receives the sum recovered in this action. The trustee will be required to hold the $5,500 to pay the defendant all he ever has been, or will be, entitled to receive from it, namely, the income or interest during his actual life, not a sum equal to the present value of such income based upon the estimated duration of his life ; and to pay to the remaindermen, not upon the expiration of the estimated life of the defendant, but upon

his death when it actually occurs, what they will then be entitled to receive, namely, the principal sum intact.

There was no error in disallowing the item of defendant's counterclaim of $425 upon the following facts found by the trial court.

The defendant, with the consent of his mother and of his sister, Mrs. Narramore, remodeled and enlarged, at a large expense, the Broad Street building, the life use of one half of which was given to Mrs. Beers by the will. Before commencing the work the defendant, as trustee of the estate, executed a writing to, and with, his mother, by which, for the expressed consideration of her agreeing to such improvements, and to join with him in the mortgages and contracts necessary to make them, he agreed that she should receive from the estate, after the south side of the building should be rented, during her life, the sum of $75 a month. Such arrangement, it was agreed, was not to be a relinquishment of her life estate in the property, but a guaranty of the value of such life estate. For a time before his removal, the defendant paid the $75 a month to Mrs. Beers, and he has received credit therefor. At times the plaintiff, with the consent of the life tenant, has paid her that sum, and at other times but $50 a month. Mrs. Beers has assigned to the plaintiff her claim for the difference between the sum paid and that so agreed to be paid, amounting to $425. The trial court refused to allow this item, upon the ground that the widow was herself indebted to the estate in a greater sum than that claimed in said item, and upon the further ground that the defendant had no authority, as trustee, to make said contract with his mother.

The basis of Mrs. Beer's claim is the defendant's written agreement, not the fact that the property in which the widow had a life estate has yielded $75 a month. We are not informed whether either the estate or the widow's life interest was benefited by the improvements. We are only informed by the finding that the rental value of the entire premises, in one half of which she had a life estate, was

about $1,200 before the improvements were made. The defendant clearly had no power, as trustee under the will, to agree to pay to the widow such fixed income of $75 a month, or to guarantee such a value of her life estate. At the most, the agreement could only be enforced against the life tenants as an arrangement made with their consent. But although Mrs. Narramore consented to the making of the improvements, she was not a party to the agreement guaranteeing the increased income to Mrs. Beers, nor does it appear that she in any way consented to it. And since the widow has assigned the claim to the defendant, it is practically against Mrs. Narramore that it is now sought to be enforced. This item was properly disallowed upon the second of the two grounds stated.

The item of the defendant's counterclaim of $238.57, described as a debt due Mrs. Beers for money paid by her for the benefit of the trust estate and assigned by her to the defendant, should have been allowed. It was disallowed upon the ground that Mrs. Beers was at the time of the assignment indebted to the estate in a greater sum than the amount of this item. It is unnecessary to decide whether, if she was so indebted to the estate, that would be a sufficient reason for disallowing the claimed credit, since the facts found do not show that such an indebtedness existed. It is found that when the defendant received the $5,500 for the sale of the schoolhouse lot, he delivered to his mother $2,000 of this amount, which she afterward, before the commencement of this action, paid out at his direction and mostly for his personal uses. It is true that if Mrs. Beers received the $2,000 from her son with knowledge of the source from which he received it, and with the purpose of aiding him in misappropriating it, she would be jointly liable with him to the estate for it. But it does not appear that she so received it, or that she in any way participated in the misappropriation, or that she knew of any intended misappropriation by the defendant. The mere fact that as an innocent depositary Mrs. Beers received from the defendant as an individual a part of the money which

was in fact paid to him by the city for the schoolhouse lot, and which she afterward, in good faith, repaid to him, did not make her a party to the defendant's misappropriation, or render her liable to the estate for the $2,000 which she had so received and repaid.

A decision of the question raised by the plaintiff's bill of exceptions is not required, since in all probability there will be no new trial of the case. General Statutes, § 804.

The judgment-file of May 8th, 1907, should have been amended by deducting from the amount of the judgment, stated to be $11,437.09, the item of the counterclaim of $238.57 which was allowed as a further credit to the defendant when the judgment was opened for that purpose on June 26th, 1907.

It may be well to suggest that in view of the interest of the city of Bridgeport in the question of title to the schoolhouse lot, and perhaps of that of Mrs. Narramore in questions raised by the counterclaim, it would have been proper for the court to direct them to be brought in as additional parties under § 621 of the General Statutes. The decision rendered, however, does not prejudice the rights of those parties.

There was error in disallowing said item of $238.57, and a new trial is granted unless the plaintiff remits that amount from the judgment.

In this opinion the other judges concurred.