## Miracle et al. v. Miracle et al.

(Decided Oct. 8, 1935.)

CLEON K. CALVERT for appellants.

LOW & BRYANT and JAMES H. JEFFRIES for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In 1917, a tract of land was conveyed to H. C. Miracle for life, with the right to use and sell timber and minerals, and the remainder in fee to his four children, by name. In February, 1924, the life tenant and three of the remaindermen executed a deed to William Green, in consideration of $15,000, with the understanding that the other remainderman, who was an infant, would execute a deed for her interest when she arrived at her majority. Of the consideration, $8,000 was paid in cash and a note for $7,000 given. Four months thereafter, H. C. Miracle was accidentally killed. Surviving him were his four children named in the deed and his widow (a second wife) and four other children. Of the cash payment, Sampson Miracle demanded and received $3,500. Sol C. Miracle was paid $2,000 and Rhoda Pursiful was paid $1,000. Thus $1,500 and the note remained in the hands of the life tenant. However, he then borrowed $1,010 from Sol C. Miracle and $500 from Rhoda Pursiful, for which he executed his notes. When the fourth remainderman, Myrtle Hurley (nee Miracle), arrived at age, she refused to execute a deed for her interest. Instead, she brought suit against Green for a partition. This was made and one-fourth of the land set apart to her, and the $7,000 note was credited by $3,750. Some years later when suit was brought to collect the balance of the note and to enforce the lien, an issue was raised between Sol C. Miracle and Rhoda Pursiful, on the one side, and the surviving widow and her children on the other, as to their rights, not only in the proceeds of the note, but in the entire consideration paid for the land. The trial court (a special judge presiding) adjudged on the pleadings that when the land was sold the life tenant was entitled to have his interest commuted to its then present worth, based upon his life expectancy. This was equivalent to 49.81 per cent. of the fund, and that proportion of the entire consideration for the land was held to be his in-

dividual estate, and therefore distributable among his widow and all eight of his children. Adjustments in the amounts received by some of the children were made in the judgment. The appeal challenges that adjudication.

The question, therefore, is: When the entire estate owned by a life tenant and remaindermen is voluntarily sold and reduced to cash, is the life tenant entitled to take in his own right, free from claims of the remaindermen, the value of his life estate, calculated upon the mortality tables according to his age, or should he take only the income from the reinvested corpus of the estate until the termination of his interest by death? It is surprising to find that after nearly 150 years this court has not been called upon to decide the question. Indeed, there are but few cases elsewhere, and those decisions are not in agreement. A pioneer case is Foster v. Hilliard, 9 Fed. Cas. p. 549, No. 4,972, 1 Story, 77. The opinion rendered in 1840, is that of Justice Story, then United States Circuit Judge. A life tenant, John Foster, with the assent of the guardian of the infant remaindermen, sold the land and received a part of the purchase money in cash and the balance in lien notes. The life tenant died about four years after the sale, having had possession and the entire use of the money and securities. His executors subsequently collected the residue of the purchase money. Suit was filed by the remaindermen against Foster's executors to recover the capital sum or the entire purchase money. The issue raised was in every respect like that in the instant case. The opinion is rested upon the absence of proof of any agreement between the life tenant and the guardian of the remaindermen as to the distribution or division of the purchase money, the court saying that the sale seemed "to have proceeded upon a mutual confidence, that the proceeds would ultimately be divided justly and equitably between the parties, according to their respective rights." In determining what those rights were, an analogy was drawn from a sale of property owned by three persons jointly owning the fee, and the argument made that it could make no difference that the ownership may have been a life tenant and remaindermen, as in contemplation of law in each case the sale is of distinct and independent interests, and in the absence of positive agreement among the parties fixing their respective shares in the purchase money, they silently agreed to apportion the same among themselves

in accordance with their respective rights; that had the life tenant sold his separate estate he would have been solely entitled to the principal of that purchase money; that there could be no difference in a joint sale, for when a sale of property is made, the ordinary result is that the vendor is entitled to the purchase money itself and not merely the income therefrom; hence the life tenant is entitled to the full value at the time of sale. Suggesting that if the property had been mortgaged, the debt must have been discharged between the parties according to the relative value of their respective interests in the land, computed according to the value of the estate of the tenant for life by common tables. It was further argued in the opinion that while the life tenant might not compel the remaindermen to submit to a sale by which their remainder interest would be materially affected without their consent, and while a court of equity might decline to interfere in adversum to change real estate by a sale into personalty without imposing conditions by which the proceeds should retain throughout the character of the original fund, the court need not account in the same manner where there had been a voluntary sale by the parties. The conclusion, therefore, was that under such a sale the tenant for life sells his life estate; that he sells it for what it is then worth, and his share does not depend upon the future event of his death, but upon its present value, computed upon his expectancy.

The Foster Case was followed in Thompson v. Thompson, 107 Ala. 163, 18 So. 247, and Callicott v. Parks, 58 Miss. 528; Keniston v. Gorrell, 74 N. H. 53, 64 A. 1101. Doubtless there are others, but our limited research has not revealed any where the facts were similar.

In American National Bank v. Taylor, 112 Va. 1, 70 S. E. 534, 536, Ann. Cas. 1912D, 40, under what the court called "a somewhat anomalous state of things," requiring the adoption of some other mode of adjustment than the application of the general rules in order to "produce the greatest equality with the least inconvenience," it was held there should be a commutation of the value of the life estate into a gross sum payable out of the proceeds; nevertheless, upon the authority of other Virginia cases, it was declared that "As a general rule, a party who has a life estate in a fund arising

from the proceeds of the sale of land is not entitled to have the value of his life estate commuted and paid to him in gross, instead of the annual interest on the fund, unless the parties in interest agree to it.''

The conclusion of the court both in respect to the general rule and the exceptions when special conditions require it as a matter of equity, is, in principle, supported by all the authorities except the three cited above; the converse of course, being true, that the remaindermen cannot compel the owner of a life estate to submit to commutation. Herbert v. Wren, 7 Cranch, 370, 3 L. Ed. 347; Ellguth v. Ellguth, 250 Ill. 214, 95 N. E. 169; Appeal of Datesman, 127 Pa. 348, 17 A. 1086, 1100; Beach v. Beers, 80 Conn. 459, 68 A. 990; Coquillard v. Coquillard, 62 Ind. App. 489, 113 N. E. 481; Beavers v. Smith, 11 Ala. 20; Ex parte Winstead, 92 N. C. 703. We may pass over a number of cases where there was involved a statute or merely an accounting by a trustee or owner of a life estate, some of which are sometimes cited as being in point on the question at bar.

The nature of a life right and its relation to the whole estate, with the prevailing legal and equitable conceptions as to the rights of the owners, would seem to make the general rule in the circumstances the sounder and more equitable. The owner of a life estate and the owner of the remainder are not tenants in common or joint tenants. The former has only the right to use the property or its rents, issues, and profits until his death, and no longer. Avey v. Hogancamp, 172 Ky. 675, 189 S. W. 917. In the sense that he must exercise reasonable precaution to preserve the property intact without injury or diminution, he holds the corpus of the estate in trust for his successor in use and its absolute owner. The protective power of the courts is often invoked in this connection. In accordance with this regard for the limitations upon the life tenant and the rights of the remaindermen, there are several classes of cases with the judicial conclusions which may be considered as influential in determining the rights of the parties under the facts presented by the case at bar.

A life tenant may not have partition of land and an allocation of a part of it in fee in proportion to the value of his interest and that of the remaindermen so that a present absolute property in their respective portions would rest in each. Coquillard v. Coquillard,

supra; Carson v. Hecke, 282 Mo. 580, 222 S. W. 850; Walton Bank & Trust Co. v. Glinn, 161 Ky. 60, 170 S. W. 511. Nor can remaindermen have compulsory partition where there is an outstanding life estate in the entire property. Duke v. Allen, 198 Ky. 368, 248 S. W. 894; Piermann v. Piermann's Guardian, 187 Ky. 392, 219 S. W. 156; Lindenberger v. Cornell, 190 Ky. 844, 229 S. W. 54. While under several sections of our statute and Code of Practice, the courts may order partition or sale of property which cannot be divided without material impairment in value where a widow has dower or widower curtesy or a life right in a portion thereof, and may, alternatively, award a gross sum to such owner absolutely as being the present value of his or her life right, the statutes do not confer such power on the courts where the life estate is in the entire property. Piermann v. Piermann's Guardian, supra. If the circumstances are such as to call for the exercise of judicial power to sell property in which there is a life right, the proceeds are held by the court until reinvested under its orders, and there is no power in the court to divide the proceeds between the life tenant and the remaindermen, or to reinvest only so much as belongs to the remaindermen, paying the commuted value to the life tenant or his grantee. Lilly v. Clay, 102 S. W. 278, 31 Ky. Law Rep. 317; Wallen v. Nicely, 222 Ky. 825, 2 S. W. (2d) 648. Formerly even some of these powers did not exist. The very presence of this restrictive statutory authority presumes the absence of judicial power to go beyond the limitations.

So where the relation of the parties is unchanged, in the absence of an agreement wherein lies the power of a court to change it and create two separate estates divided in ratio of present worth merely because the parties agreed to substitute money and securities for land? There are legal rights which cannot be disturbed because developments (such as the early decease of the life tenant) indicate a different action should have been voluntarily entered into but was not. As the life tenant could claim only the use of the land while he lived, so could he claim only the use of the proceeds of a sale. If he could demand commutation of his estate into the equivalent of present value based upon his expectancy, might he not also demand the power to devise his life right until the end of that expected term of life and make it effective in case he died at an earlier date? Or

could he not claim the right to the rents for that extended period? When his life terminates, his estate terminates, and the remaindermen come into the enjoyment of their estate whether it was in land or in money and securities.

An analogy is the leasing of land with this status of ownership for oil and gas or other minerals. Such instruments evidence a species of sale of real estate, a separation of minerals in place and the surface. It is all but universally held that in the absence of an agreement, where all parties unite in an oil lease, the life tenant has only the income from the accumulating royalties and has no right to any part of the preserved corpus of the royalties. Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757.

Our conclusion, therefore, is that where there has been a voluntary sale of property owned by a life tenant and remaindermen without agreement as to the disposition of the proceeds, the same shall be regarded as a substitution and the respective rights continue therein as had existed in the property sold, that is to say, the life tenant will continue to have only the right to the income and use of the converted estate until it is terminated by his death, when the rights of the remaindermen become complete and absolute.

In the case at bar it is shown that the infant remainderman having declined when she became of legal age to ratify the agreement to join the conveyance of the whole estate, she came into her full property and received one-fourth of the land, which resulted in crediting the unpaid purchase-money note by one-fourth of the agreed consideration. One son, on demand, received at the time one-fourth of the entire consideration, less $250. The unequal and lesser payments to the other two remaindermen to each of whom also had been conveyed a one-fourth remainder interest does not indicate any agreement upon their part as to what should be done with the fund; the result of adjudging a commuted life estate is to deprive these two of most of their interest in the property. The situation is like in the Foster Case, supra, where it seemed the parties "proceeded upon a mutual confidence, that the proceeds would ultimately be divided" according to their respective rights. The borrowing back by the father of one-half the sums given to these two further complicates

any attempt at presumption as to what was the understanding. However that may be, it is manifest there was no agreement that the life tenant should as of the day of the sale receive as his separate and individual estate the equivalent of the present value of his life estate as was adjudged by the trial court. We think his entire interest in the proceeds was extinguished by his death. It should be added that the power granted the life tenant to sell timber and minerals had never been exercised, so it is not material to the decision. Mc-Cullough's Adm'r v. Anderson, 90 Ky. 126, 13 S. W. 353, 11 Ky. Law Rep. 939, 7 L. R. A. 836.

The judgment not being in accordance with these views, it is reversed.