## Mills et al. v. Mills et al.

(Decided Nov. 18, 1938.)

HIRAM H. OWENS for appellants.
TUGGLE & TUGGLE for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

A. Y. Mills and Nancy Mills by petition in equity claimed to be joint owners in remainder in fee simple to a three-fourths undivided interest, subject to the life estate of defendants, Mat and Sawyer Mills, in a tract of land in Knox County described in the petition. The Witmer Company was also a defendant.

Appellants alleged that Mat and Sawyer Mills had leased the oil and gas rights, in and under the entire tract of land mentioned, at a time when they owned only a one-fourth undivided interest, with life estates in three-fourths, hence they had no legal right to convey the minerals in the three-fourths undivided interest in which they (Mat and Sawyer) held only a life estate.

For this lease the Witmer Company paid the Mills brothers as much as $500; entered the lands and began operation, discovering gas, which lessee had refused and declined to market. As a part of the contract the lessee was to pay the lessors $100 per year, which has been paid for "some two or three years."

It was alleged that "insofar as the lease contract undertook to give the lessee the right to take minerals from the lands owned by plaintiffs herein, the lease is void. * * * Nevertheless, the defendant, in good faith entered thereon, believing it had the right so to do, and plaintiffs now waive right of forfeiture and insist only upon their right to receive their pro rata part of the rentals accruing, which is three-fourths thereof, and ask

judgment against the defendant company therefor, and in failure to receive same, forfeiture and ejectment of the defendant company from said lands,'' and damages in the sum of $500 for trespass on their interest.

To this petition Mat and Sawyer Mills jointly answered, denying the allegations of the petition.

The Witmer Company filed what it styled, ''Separate amended answer of Witmer Company,'' reaffirming all allegations of its original answer, counterclaim and cross-petition. We have been unable to find that pleading in the record.

The company denied the allegations of the petition, and pleaded that the land mentioned in the petition was, prior to November 6, 1924, owned by Butler and others, who on said date, by general warranty deed conveyed the fee simple title to Mat and Sawyer Mills. That on January 9, 1932, Mat and Sawyer Mills executed oil and gas leases to one Henninger; that he, in order to ascertain the validity of a lease from the Mills, employed an attorney to investigate and report upon the title. Thereafter Henninger was assured that the title was in Mat and Sawyer, and that there was no lien or encumbrances.

Upon this reliance Henninger accepted the lease, and on March 23, 1932, for valuable consideration assigned it to the Witmer Company they asserting that Henninger was an innocent lessee for value, without notice of defect of title. Thereafter, in 1933, A. Y. and Nancy Mills, instituted an equitable action in the Knox court against Mat and Sawyer, in which they claimed to be owners of the land under lease. By judgment entered on September 13, 1934, Sawyer and Mat Mills were adjudged to be the owners of an undivided one-fourth interest in the boundary of land in controversy. In addition Mat and Sawyer Mills were adjudged to own a life estate in the remaining three-fourths undivided interest, ''with ownership to the one who survives the other,'' the remainder in and to the three-fourths undivided interest to ''pass upon the death of the last of the said Sawyer and Mat Mills, to the living legal heirs of A. Y. and Nancy Mills.''

A. Y. and Nancy Mills appealed from this judgment, and on November 7, 1935, this court affirmed the judgment of the lower court, 261 Ky. 190, 87 S. W. (2d)

434

389, and the court's opinion was made part of answer. It was alleged that at the time of the institution of this action plaintiffs had, and now have, no other title or interest in the land covered by the lease, except such title as that determined in the aforesaid action. Hence, the answering defendant (Witmer Company) says that because of the facts set out herein, and in its original answer, the plaintiffs have no right, title or interest in the land involved, hence no right to maintain this action, and asked that the petitions be dismissed.

At this stage of the proceedings Cordie Taylor, Dicie Jackson and Winnie Edwards, in petition to be made parties plaintiff, allege that they, with Mat and Sawyer, are the only living heirs-at-law of A. Y. and Nancy Mills. They say the title to the land covered by the Witmer lease, upon execution of the Charley Butler &c., deed to Mat and Sawyer, vested in Mat and Sawyer only one-fourth undivided interest in said lands, with three-fourths, at the death of Mat and Sawyer, vested in the petitioners; hence, they are necessary parties plaintiff; they adopt such allegations of the A. Y. Mills' petition as do not conflict. They yield to plaintiffs all rights asserted in said petition, in so far as same affect these "defendants." They, however, assert all title and interest which they have in, to and under the lease contract as against the defendants, Sawyer and Mat Mills, and consent that the lease contract remain in full force, and waive any right they have to contest its validity, in so far as same affects the Witmer Company, and ask an equitable division of the rents and royalties heretofore, and hereafter to be, realized.

These interpleaders ask the court to set aside enough of the accrued and accruing unpaid rentals to A. Y. and Nancy Mills, and these intervenors, to equal and consume advance payments previously made to the said Mat and Sawyer, "to which they were not entitled, and should the said Witmer Company decline to take notice of this claim and hereafter pay to S. A. and Mat Mills, then interpleaders say they are entitled to judgment against it as to the said rentals, royalties and income so paid by it wrongfully, after receiving notice of this claim." The intervenors replied to the answer of the Witmer Company, denying that the land in controversy was conveyed in fee simple to Mat and Sawyer Mills, or title vested in them except as asserted by plaintiffs and these petitioners.

The interpleaders were made parties over objection of Sawyer and Mat who demurred to the petition; demurrer overruled. Sawyer and Mat then answered, denying the asserted right. In a second paragraph they say that at the time of the execution of the lease there was paid a bonus of $500, of which one-third was turned over to A. Y. and Nancy Mills; that on May 2, 1933, there was paid $50, and on December 1, 1934, $100 rentals, and that no other payments were made on the lease. They pray that the petition of the intervenors be dismissed.

Upon the issues raised there was meager proof offered. Cordie Taylor, one of the intervenors, said her father, A. Y. Mills, was seventy-five years old and her mother, Nancy, seventy-six, both living. She filed the judgment of the Knox circuit court in the case of Mills v. Mills, &c., and made part of her deposition the decision of the Court of Appeals, affirming that judgment. She said that she had received no part of the bonus, rental, or royalties paid to Mat and Sawyer, and did not know of any of the other heirs having received any portion. She said she "claimed" an interest in the tract leased to Witmer Company. She did not know whether the mother or father had received any part of the bonus or rentals.

Jordan, an attorney for the Witmer Company, said that on the lease from Mat and Sawyer the company had paid $500, on delivery of the lease. The company struck two productive wells, one on May 7, 1932, on which they paid $50 a year for two years for each well, and the same on the second well, which was drilled September 1, 1932, and they had paid a judgment of $850 and $25 costs in the Knox circuit court in the case of First National Bank. This is referred to in the case of Owens v. Witmer Co., infra.

A. Y. Mills, the father, testified as to the $500 paid as bonus, and said:

"They gave me $166.00, I believe of it, and I gave it up to Sawyer. I never got any of the rentals. What I got of the one-third was the $500.00 bonus, which was paid at the time the lease was given."

In this state of the record the case was submitted; and the court adjudged that the plaintiffs were not entitled to the relief sought; that plaintiffs' petition be

dismissed, and that they take nothing thereby, and that the defendants Sawyer and Mat Mills have the right to *collect* all royalty due and to become due on the leased land during their lifetime. From this judgment the original and intervening petitioners prosecute this appeal.

It may be gathered from the record and briefs, filed by all parties, that the Witmer Company, is not particularly disturbed about title, since the parties plaintiff show no inclination to disturb the lease. Of course, they are interested in knowing to whom they are to pay rents and royalties, so as to be acquitted.

In a brief filed in behalf of appellee (in this case) there is little said on the subject of the rights of petitioners and interpleaders. In the Owens' Case, infra, there is a brief for the Witmer Company, in which the question is discussed. Here it is contended, and this seems to be admitted by all parties, that A. Y. Mills and wife have no interest in the land, or in the rents and royalties, hence it is argued the intervenors have no right to come in as interpleaders.

We agree that by the court's construction of the deed from A. Y. Mills and wife to Sawyer, as construed by this court, A. Y. Mills and wife have no interest in the lands, hence none in rents and royalties. It is also apparent there was divestiture when they joined in the deed from Mat and Sawyer in the land exchange with the Butlers.

It is not argued that the interpleaders did not assert any rights as against Sawyer and Mat, or indirectly as against lessees. It is argued that since A. Y. and Nancy failed to successfully show any right or interest against defendants, that intervenors could not, by petition seeking to be made plaintiffs, succeed, and that the court properly dismissed their petition. It is also contended that there was no verification of their pleading, and because of such failure, the court properly dismissed their petition. Reliance on each of the contentions is had on section 29 of the Civil Code of Practice, which we conclude is not applicable.

As to the matter of verification, there is nothing in the record to indicate that objection to the filing of the unverified pleading was made on that ground. This technical objection was waived. Civil Code of Practice,

section 138; Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941. There was demurrer, but that was not the proper method of reaching the alleged defect. Brannen v. Lally's Adm'r, 260 Ky. 302, 85 S. W. (2d) 667.

It is argued that in no event could the interpleaders recover in this action, unless A. Y. Mills and wife are entitled to recovery, and in which event recovery of interpleaders would come out of the recovery of plaintiffs. We do not so see the situation or construe the pleadings. Intervenors claimed directly as against Mat and Sawyer, and in the alternative against lessees. They did not claim as against original plaintiffs. As a matter of fact they recognized their rights. They, the interpleaders, did not undertake to, nor did they supplant the plaintiffs. A careful reading of sections 22, 23 and 24 of our Civil Code of Practice makes it clear enough that the interpleaders were properly made parties plaintiff, and had the right to prosecute their cause in the manner adopted.

When we get to the Witmer Company's brief, filed in the Owens Case, infra, we do not find it seriously contended that the intervenors have no interest in the lease. It is admitted that A. Y. and Nancy Mills have no interest, but it is said: "But these children have no interest, except possibly as remaindermen, their several interests to be determined after the death of the survivor of both life tenants." The greater part of the brief is taken up with recitation of contingencies and possibilities, which we recognize fully, but do these possibilities and contingencies lead to a conclusion that the three intervenors have no interest at all? We think not, and we are further of the opinion that all the parties to this proceeding are of the same belief, but the disturbing factor is the manner and method of relieving the lessee of future entanglement in the matter of paying rents and royalties.

That the intervenors do have an interest is well settled by decisions of this court, and cases from many other jurisdictions. Under our decisions a lease of minerals underlying the land surface, is treated as a sale of a portion of the real estate, and differs from a lease for use of the surface. Under a mineral lease there is a disposition and diminution of the corpus, quite frequently the minerals being the substantial value of the estate, and a life tenant has no right or authority to dispose of

438

or diminish the body of the estate, and in so doing deprive the remaindermen of what may develop to be a valuable interest, except under circumstances which do not exist here.

In the case of Miracle v. Miracle, 260 Ky. 624, 86 S. W. (2d) 536, 102 A. L. R. 964, this principle of ownership is exemplified [page 538]:

> "The owner of a life estate and the owner of the remainder are not tenants in common or joint tenants. The former has only the right to use the property or its rents, issues, and profits until his death, and no longer. Avey v. Hogencamp, 172 Ky. 675, 189 S. W. 917. In the sense that he must exercise reasonable precaution to preserve the property intact without injury or diminution, he holds the corpus of the estate in trust for his successor in use and its absolute owner. * * * If the circumstances are such as to call for the exercise of judicial power to sell property in which there is a life right, the proceeds are held by the court until reinvested under its orders, and there is no power in the court to divide the proceeds between the life tenant and the remaindermen, or to reinvest only so much as belongs to the remaindermen, paying the commuted value to the life tenant or his grantee. * * *

> "An analogy is the leasing of land with this status of ownership for oil and gas or other minerals. Such instruments evidence a species of sale of real estate, a separation of minerals in place and the surface. It is all but universally held that in the absence of an agreement, where all parties unite in an oil lease, the life tenant has only the income from the accumulating royalties and has no right to any part of the preserved corpus of the royalties. Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757."

It is unnecessary for us to quote from a number of cases bearing directly on this point, but we may cite as being in point, Superior Oil Corp. v. Alcorn, 242 Ky. 814, 47 S. W. (2d) 973, and as bearing on the question, Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S. W. (2d) 394; McPherson v. Thompson, 203 Ky. 35, 261 S. W. 853; Harkins v. Keith, 267 Ky. 353, 102 S. W. (2d) 5.

Expressing the above views, based on the principles laid down in the cited and other cases, we can not escape

the conclusion that the original grantors, the father and mother, have no interest in the bonus and rentals for which they contend. Further that Mat and Sawyer Mills had right and title to one-fourth of such bonus and rentals, because of our construction of the Mills to Mills deed, and the deed from Dunn and others to Mat and Sawyer. Also that the two brothers, because they are life tenants as to the remaining undivided three-fourths interest in the tract of land, are entitled during their lives to the joint use of, interest on, or income accruing from the bonus and rentals. Crain, Guardian v. West's Adm'r, 191 Ky. 1, 229 S. W. 51. However, the corpus of the bonus, rents and "royalties, like the land from which it came, was the property of the remaindermen, and should be preserved for them." Crain Case supra, 229 S. W. 54, and cases cited.

This use of the income should pass to the survivor of the two life tenants, and at the death of the survivor, the estate will pass to those entitled to the corpus, under the deed as we heretofore construed it.

Upon a return of the case, since we have concluded it should be reversed in part, the court should adjudge that the two brothers are entitled to the fee in one-fourth of the total bonus and rents. It should also ascertain what bonus and rents have been received, and should make such orders as may appropriately preserve to the remaindermen their interests, directing that the interest on, or income from the bonus and all rents should be paid to the life tenants.

Judgment is affirmed on the appeal of A. Y. and Nancy Mills, and reversed on the appeal of the interpleaders.