Judge Underwood
delivered the opinion of the Court.
This was an ejectment instituted by the appellees against the appellant, to recovera few acres of land. The lessors of the plaintiff claimed under a patent or patents to John Anderson, a deed from him to William Anderson, and a deed from him to Maxwell, and the sole inquiry properly involved -in the controversy, was, to ascertain what lands were included by the boundary set forth in the deed, from the patentee to his son William. All other matters were too plain for the slightest doubt or difficulty to arise out of them.
Two tracts of land were granted to John Anderson, on the 15th June, 1784, one of 400, the other of 200 acres, adjoining each other, bounded by lines running in the Cardinal points. The tract of 400 acres, according to the patent, extended .320 poles from east to west,and 200 poles from north to south; the tract of 200 acres began at the south east 'corner of the tract of 400 acres, and extended west 300 poles, and south 107 poles.
On the 2d of July, 1793,' John Anderson conveyed to William Anderson, a parcel of the 400 acres tract, said in the deed to be 200 acres, beginning at.the north east corner,- and chlling to run west 162 poles; thence south, -116 poles; thence west, 2 1-3 poles; thence south, 64poles; thence east, 166 poles; thence north, 180 poles,-to the beginning, calling for trees as corners, at the end of each distance.
It is thus manifest, by comparing the patent and deed, that if the patent lines were not shorter than stated to be, between the objects called for, and if the lines in the deed between the corners called for, -were not longer than stated to he in the deed, then the southern limit of the 200 acres conveyed, would not reach the southern limit of the 400 acres, as granted, by 20 poles; and yet it is contended by the lessors, that *448 the 200 acres conveyed, may not only reach the southern boundary of the 400 acres’ patent, but actually extends over it, into the limits of the 200 acres’ patent, and that the lessors must hold part of the 200 acres, because, at the date of the conveyance,, both tracts were owned by the vendor and patentee, in case the boundaries of the deed should cover any part of it.
When the corners are destroyed by violence or time, parol proof to be admitted to point out where they were.
The law is laid down correctly, if the facts will justify its application, but in the absence of satisfactory proof, as to the position of the southern corners of the parcel conveyed, it would never be presumed that they run' into the 200 acres tract. All the testimony concurs in showing that the.400 acres tract was not 200 poles from north to south. The southern corners of the tract are not identified by corner trees now standing, corresponding with the patent calls, neither are the. southern corners, called for, in Maxwell’s deed, identified by standing corner trees, corresponding with its calls. The consequence is, that we are dependent on parol proof to locate the corners, or they must be ascertained by running out the corners and distances of the title papers.from some known corner. The north east corner of the 400 acres tract, and the south east corner of the 200 acres tract, or the places where they stood, are established by clear, unconflicting testimony. The division corner is not, and as there is not sufficient space between said corners, to give the patent distances, the lines of each patent must be shortened, or one to get its distance must curtail the other. We know of no rule'by which to be governed in deciding that the patent distances shall be docked proportionably, for the purpose of establishing the division corner; neither can we say that either patent shall have its' full distance, and thereby curtail the other. But it is deemed wholly unnecessary to the merits of this case, to settle how the division corner, between the two tracts, shall be fixed. It is only important to ascertain where the southern corners of Maxwell’s deed shall be located, for he has a right to hold up to them. We are of opinion that the weight of evidence very satisfactorily shews that the south east corner of Maxwell’s deed, a sugar tree did not stand further south than the letter M, on Tunstall’s plat, and the letter A, on Croak’s. *449 The testimony of James Ándersou, the surveyor who* át the request of the patentee* laid off the 200 acres for the lessors of the plaintiff, is conclusive upon this head, and we see nothing in the record to impeach his credibility sufficiently strong' to do away the force of his testimony. On the contrary, there are many things to corroborate it* Such as the putting up a sttine corner, a little west of the point shbwil By Anderson* ás the place where the sugar tree stood* and the well marked line running west from the stone corner; and the fact that Anderson, in order to ascertain the south feast corner of the plaintiff’s 200 acres* began the survey at the south east corner of the 200 acres patent* and run north the distance called for in the 200 acres patent, to-w-it: 107 poles; and the distance from said south east corner to the stone corner, is .found now to be only 108 poles, as reported by Tunstáll, and 107 poles as reported by Crook. The white oak and hick* ory stumps claimed by the lessors of the plaintiff, as their south west corner, are disproved by James Anderson, the surveyor, who fixes that corner on thfe marked line from .the stone corner, between the two ash trees, at 12 on Crook’s plat. We cannot escape the force of this testimony, except by believing that James Anderson was grossly mistaken, or had perjured himself, and in the absence of all proof, as to the want of credibility* we think his testimony entitled to additional consideration, from the fact that he was employed to lay off the land, for the purpose Of ena* bling the patentee to make the deed, and bis swearing that he had been acquainted with the owners ever since*
The previnee of the jury td judge of the credibility of the testimony but when there is no e’ridenoe con* ducing to Sustain a verdict, the court will in* terposej
We are apprized that it belongs to the jury tojudge of the credibility of witnesses, and if there was any testimony conducing to prove that the south east corner of Maxwell’s deed* was further south than the stone corner, we might not be disposed to disturb the verdict; but the only evidence in the cause* which can justify such a presumption, is the call of distance in the deed, making it 180 poles from the north eastcortier of the 400 acres tract* to the sugar tree called for, as the south east corner of the 200 acres, conveyed by the patentee. That call for distance should yield t© *450 the positive proof, locating the object called for, at of a little to the east of the stone corner, and this leads us to the consideration of the instructions of the court in regard to the conclusive effect of the calls, in the title papers which we deem erroneous,.and in consequence of which, it is more than probable, the jury were lead to disregard the testimony of the surveyor, James Anderson. It may, however, be first remarked, that the testimony of John Anderson, son of the patentee, and brother of Wm. Anderson, fully corroborates .the testimony of James Anderson, the survey- or, the two brothers being chain carriers when their lands were laid off by him, and the boundaries marked.
Deeds operate as an estoppel, patents are only prima facie evidence of the facts recited, parol evidence may be adduced to contradict or control courses, distances, and other calls of a patent.
In regard to the instructions, it is sufficient to state that the court, in substance, instructed the jury that they were bound to presume that the objects called for in the deed, from the patentee, were in existence, ofr the ground, at the date of the deed, as described in the deed, and that the patents read, were conclusive evidence of the facts stated in them, and showed con~ clusively, that the surveys for 400 and 200 acres were not made at the samé time, and were not made in one original .survey, and that there- was a black walnut, constituting the eastern division corner, between the two tracts. We believe the law was not correctly stated, and the effect of the misdirection was to Weaken the' testimony of James Anderson, and to show that no reliance could be placed on his statements, relative to the manner in which the original surveys had been made, and thereby to destroy his whole testimony. It may be conceded, that a deed will operat.e as an estoppel,-so that the party executing it, and those claiming under him, cannot gainsay the facts recited in the deed; but this rule cannot apply to patents, so as to make them conclusive evidence of courses, distances, corner trees, dales of surveys, &c. The patentee and those claiming under him, do not, by any acts of theirs, create an estoppel, nor does the surveyor, who is a mere ministerial officer, upon any legal principle, create an estoppel, thereby binding the patentee and those claiming the land, to regard the grant as containing absolute verity. Such a doctrine is alike at war with reason, and the repeated adjudications of this court. It is admitted that the legal presumption is, that the *451 surveyor, register, governor and secretary of state, have done their duty, in regard to the several acts, necessary to be performed by.them, in granting lands; and therefore, surveys and patents should always be received as prima facie evidence of correctness, but further we cannot go. In Hickman vs. Boffman, Har. 358, this court has defined what constitutes a survey, according to law.
The acts legally done on the ground, by the surveyor, constitute the survey, he may make out the certificate thereafter ; any mistake or fraud, in doing it, may be corrected.
No fact to be presumed; which does not necessarily result from establisherl or conceded premi, ses.
*451 It is the acts done ofl the ground, by the surveyor, in pursuance of lawful authority, which constitute the survey. The surveyor may make out his plat and certificate thereafter, and if he should misstate what was actually done on the ground, either through fraud or mistake, it would be alike preposterous and unjust, to preclude a party from proving the truth, by the production of a false certificate. In Morrison vs. Cog-hill’s legatees, Printed Decisions, 382, the court say, “it is a rulé, founded on every days practice and experience, that if a course and distance be called for, and there be a marked line and corner, variant from that course which is proved or admitted to be .the line made-by the surveyor, as the boundary, that the marked line-shall be preserved.” In Helm vs. Small, Har. 369, parol proof was admitted to reverse the courses called for in the patent. These are leading cases showing that parol proof may be introduced to correct mistakes made in description, and have been since followed without exception, so far as we know. If a patent calls for a black walnut at the end of 200 poles, and it is proved that the surveyor actually stopped at 180 poles, and marked a white walnut or a black locust, as the corner, we cannot admit that the patentee can disregard the corner thus proved, and extend his survey 20 poles further, under the idea that his patent is conclusive evidence, that a black walnut was marked fop him, and that not being found, he has a right to run out his distance.
It is known that surveyors are sometimes given to the practice of making large surveys-, and then dividing them in their offices, without going on the ground, with a view to give the locator his part,, or because the length was greater in proportion to the breadth than was allowable, or for some other cause. Thus *452 there might be on paper two surveys and patents, when in truth, but one was made on the ground. Tot make the existence of two paper surveys, conclusive evidence of the making two surveys in fact, on the ground, would be establishing, by presumption, a thing which does not necessarily result as a consequence from such premises, and therefore such a rule would be a violation of those principles of evidence, which respect the order and laws of moral and physi-. cal nature, in regard to cause and effect, upon whid* circumstantial or presumptive evidence is founded. We therefore think the court erred in its instructions.
Error to instruct thejury that, unless they can precisely fix the position of a corner, they must re, cur to the ex-tention of the courses and, distances.
Not necessary to ipahe formal motion for new trial, if all the evidence appear in t|)£ record.
We are also of opinion that the third instruction was not strictly proper. In that, the court say, if the jury cannot ascertain precisely where the white oak and hickory stood, then the line must extend south the course and distance-called for, unless the jury find that there was an actual marked boundary to control the plaintiff, Now, suppose the jury were satisfied within ten feet of the place Where the corner stood, yet could not precisely locate it, and there was no. marked boundary, would that authorize the jury to extend the line south, 10 or 20 poles? We think not^ On the contrary, they would not be authorized to carry the line further south than the furthest point, beyond which, southwardly, they should believe, from the evidence, the corner did not stand. In such a case, it would be their duty to locate the corner in their finding, according to. the proof, as correctly as they could, and not abandon the proof and follow the distance, if they were convinced that the distance would take them beyond the corner. The instruction of the court was calculated to make them do this, and was, therefore, wrong.
We do not deem it important to notice other instructions, seeing nothing objectionable in them, nor do we see any error in admitting the copy of the 200 acres sprvey as evidence.
The judgment of the circuit court must he reversed, both because the verdict is against the weight of evidence, and for errors in the instructions. At the last term of this court, it was decided that a final exception to the opinion of the court, in overruling a motion *453 for a new trial, was unnecessary, when the record set out all the evidence, and shewed that a motion for a new trial was made and improperly overruled. The appellant must recover his costs.
Goodloe and Caperton, for appellant; Turner, for appellees.