## UNITED STATES *v.* EWING.

APPEAL FROM THE COURT OF CLAIMS.

No. 225. Argued November 12, 13, 1901.—Decided February 24, 1902.

Construing the act of March 3, 1883, c. 119, 22 Stat. 487, and the act of June 12, 1866, 14 Stat. 59, both relating to the salaries of postmasters, as their terms require, the judgment of the Court of Claims in this case is erroneous; but the charges of misconduct, maladministration and fraud against the officers of the Post Office Department, so freely scattered through the briefs of counsel for appellee, are entirely unwarranted by anything contained in the record.

THE Government appeals from a judgment of the Court of Claims awarding to the petitioner the sum of $1264.83, upon a readjustment of salary for his services as postmaster at Gadsden, in the State of Alabama, between July 1, 1866, and June 30, 1874. The original petition was filed in October, 1888, in consequence of the passage of the act of March 3, 1883, c. 119, 22 Stat. 487, which reads as follows:

"That the Postmaster General be, and he is hereby, authorized and directed to readjust the salaries of all postmasters and late postmasters of the third, fourth and fifth classes, under the

classification provided for in the act of July first, eighteen hundred and sixty-four, whose salaries have not heretofore been readjusted under the terms of section eight of the act of June 12th, eighteen hundred and sixty-six, who made sworn returns of receipts and business for readjustment of salary to the Postmaster General, the First Assistant Postmaster General, or the Third Assistant Postmaster General, or who made quarterly returns in conformity to the then existing laws and regulations, showing that the salary allòwed was ten per centum less than it would have been upon the basis of commissions under the act of eighteen hundred and fifty-four; such readjustments to be made in accordance with the mode presented in section 8 of the act of June 12th, eighteen hundred and sixty-six, and to date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business, or quarterly returns were made: *Provided,* That every readjustment of salary under this act shall be upon a written application signed by the postmaster or late postmaster or legal representative entitled to said readjustment; and that each payment made shall be by warrant or check on the Treasurer or some assistant treasurer of the United States, made payable to the order of said applicant, and forwarded by mail to him at the post office within whose delivery he resides, and which address shall be set forth in the application above provided for."

The petitioner claimed that by a readjustment of his salary under that act he was entitled to be paid a difference of $1264.83 between the salary actually paid him and the amount to which he was entitled by reason of such act.

By the act of June 22, 1854, 10 Stat. 298, Congress provided for the compensation of postmasters by allowing them commissions on the postage collected at their respective offices in each quarter of the year, and in due proportion for any period less than a quarter. The compensation awarded was as follows:

On any sum not exceeding $100, 60 per centum;

On any sum over and above $100, and not exceeding $400, 50 per centum;

On any sum over and above $400, and not exceeding $2400, 40 per centum;

On all sums over $2400, 15 per centum.

This method of compensation was changed by Congress by the passage of the act of July 1, 1864. 13 Stat. 335. By that act it was provided that the annual compensation of postmasters should be at a fixed salary in lieu of commissions, the postmasters to be divided into five classes, with compensation respectively as follows:

First class to receive not more than $4000, nor less than $3000;

Second class to receive less than $3000, and not less than $2000;

Third class to receive less than $2000, and not less than $1000;

Fourth class to receive less than $1000, and not less than $100;

Fifth class to receive less than $100.

The first section of the act then proceeds as follows:

" Whenever the compensation of postmasters of the several offices, (except the office of New York,) for the two consecutive years next preceding the first day of July, 1864, shall have amounted to an average annual sum not less than $3000, such offices shall be assigned to the first class; whenever it shall have amounted to less than $3000, but not less than $2000, such offices shall be assigned to the second class; whenever it shall have amounted to less than $2000, but not less than $1000, such offices shall be assigned to the third class; whenever it shall have amounted to less than $1000, but not less than $100, such offices shall be assigned to the fourth class; and whenever it shall have amounted to less than $100, such offices shall be assigned to the fifth class. To offices of the first, second and third classes shall be severally assigned salaries, in even hundreds of dollars, as nearly as practicable in amount the same as, but not exceeding, the average compensation of the postmasters thereof for the two years next preceding; and to offices of the fourth class shall be assigned severally salaries, in even tens of dollars, as nearly as practicable in amount the same as, but not exceeding, such average compensation for the two years next preceding; and to offices of the fifth class shall be severally assigned

salaries, in even dollars, as nearly as practicable in amount the same as, but not exceeding, such average compensation for the two years next preceding. Whenever returns showing the average of annual compensation of postmasters for the two years next preceding the first day of July, 1864, shall not have been received at the Post Office Department at the time of adjustment, the same may be estimated by the Postmaster General for the purpose of adjusting the salaries of postmasters herein provided for. And it shall be the duty of the Auditor of the Treasury for the Post Office Department, to obtain from postmasters their quarterly accounts with the vouchers necessary to a correct adjustment thereof, and to report to the Postmaster General all failures of postmasters to render such returns within a proper period after the close of each quarter.

"SEC. 2. *And be it further enacted,* That the Postmaster General shall review once in two years, and in special cases, upon satisfactory representation, as much oftener as he may deem expedient, and readjust, on the basis of the preceding section, the salary assigned by him to any office; but any change made in such salary shall not take effect until the first day of the quarter next following such order, and all orders made assigning or changing salaries shall be made in writing and recorded in his journal, and notified to the Auditor for the Post Office Department."

Subsequently by section 8 of the act of June 12, 1866, 14 Stat. 59, 60, section 2 of the act of 1864 was amended by adding the following:

"*Provided,* That when the quarterly returns of any postmaster of the third, fourth or the fifth class show that the salary allowed is ten per centum less than it would be on the basis of commissions under the act of 1854, fixing compensation, then the Postmaster General shall review and readjust under the provisions of said section."

The Court of Claims finds that the petitioner was, as postmaster of Gadsden, Alabama, paid:

"For his services between July 1, 1866, and
    June 30, 1868, $73 per year, or for two years   $146 00

|  |  |  |
|---|---|---|
| Amount brought forward, | $ 146 | 00 |
| For his services between July 1, 1868, and June 30, 1870, at $220 per year, or for two years...................................... | 440 | 00 |
| For his services between July 1, 1870, and June 30, 1872, at $460 per year, or for two years................................... | 920 | 00 |
| For his services between July 1, 1870, and June 30, 1874, at $540 per year, or for two years ..-............................... | 1080 | 00 |
| In addition thereto since said service for the two years between July 1, 1868, and June 30, 1870, $45.95 per year, amounting for the two years to....-................................ | 91 | 90 |
| And for the two years between July 1, 1870, and June 30, 1872, $47.50 per year, amounting for the two years to......................... | 95 | 00 |
| Amounting in all to.................. | $2772 | 90 |

" During his first biennial term his adjusted salary was less than $100.

" During his second, third and fourth biennial terms his adjusted salary was more than $100 and less than $1000 per annum.

" III. He made application in writing to the Postmaster General for readjustment and payment of salary (under chapter 119 of the laws of 1883) for service as postmaster, in accordance with chapter 61 of the laws of 1854 and section 8 of chapter 114 of the laws of 1866. This he did prior to January 1, 1887. The Postmaster General thereupon stated plaintiff's account, as shown later in these findings. This statement shows that (if plaintiff be correct in his contention as to the law) his salary for the four biennial terms between July 1, 1866, and June 30, 1874, should have been $4037.73, whereas he has been paid in all for said terms but $2772.90; so (if he be correct) there is still due him as readjusted salary $1264.83."

The court also sets out certain correspondence between its clerk (under its direction) and the Postmaster General in regard

to papers in the Post Office Department, showing or tending to show what action, if any, had been taken by the Department on request of petitioner for readjustment of salary under the act of 1883. It does not clearly appear therefrom that Postmaster General Wanamaker, to whom the clerk addressed his communication, had readjusted the salary, but subsequently to the correspondence the Court of Claims finds, in its fifth finding, that on November 19, 1897, Postmaster General Gary certified and returned to the Court of Claims a readjustment of the petitioner's salary and documents relating to the action of the Post Office Department in this and similar cases, and the court in such fifth finding concludes thus:

" If the foregoing readjustment of Postmaster General Wanamaker is the readjustment prescribed and intended by the statutes therein referred to, there is no balance of salary remaining due the plaintiff. If the readjustment hereinafter set forth of Postmaster General Gary is the readjustment prescribed and intended by the said statutes, there remains due to the plaintiff the sum of $1264.83."

But the court, by its conclusion of law, finds that no legal readjustment of salary was made by Postmaster General Wanamaker, and that the readjustment made by Postmaster General Gary was valid under the statute, and therefore ordered judgment for $1264.83.

*Mr. Assistant Attorney General Pradt* for the United States.

*Mr. Harvey Spalding* for Ewing.

Mr. Justice Peckham, after stating the above facts, delivered the opinion of the court.

The question at issue between the parties is as to the proper construction of the act of Congress approved March 3, 1883, and which is set forth in the foregoing statement of facts. It is contended, on the part of the petitioner, that when application is made to the Postmaster General for a readjustment of salary between the period from 1864 to 1874 it is his duty,

under the statute of 1883, to compare the salary which the petitioner received in each biennial period with what he would have received in commissions on the receipts of his office, as shown by the sworn returns of the receipts and business of such office, under the statute of 1854 during the same term, and if on such comparison it should appear that the salary thus allowed was ten per centum, or more, less than such commissions, then to readjust the salary for the biennial term by allowing the petitioner the difference between the salary and the commission for that particular term. This has been done by the Court of Claims in its judgment in this case.

The Government, on the other hand, contends that to do so would be a plain violation of the statute, which provides that the readjustments shall be made in accordance with the mode prescribed in section 8 of the act of June 12, 1866, and that they shall date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business or quarterly returns were made. In other words, the petitioner claims that upon a comparison of the actual salary paid him in a two-year period, with what he would have received for the same period upon the basis of commissions on the sum of the quarterly returns for that period, if the salary paid him were ten per cent less than the commissions, he was entitled to be paid the difference for that particular biennial term, whereas the Government contends that by virtue of the statute the readjustment is to date from the immediately succeeding quarter.

Going back to the statute of 1854, providing for compensation by commission, we find the act authorized the Postmaster General to allow the commissions to postmasters at the rates named therein and to be based on the postage collected at their respective offices in each quarter of the year. Then came the act of July 1, 1864, providing for payment to postmasters by salary, and classifying them according to the salary received. There were five classes thus made, and they were arranged at the commencement by reference to the compensation paid to the office for the two years next preceding July 1, 1864. The second section of the act provides for a review by the Postmaster General once in two years, and a readjustment of the sal-

aries on the basis of the preceding section, but any change made in the salary, the statute provided, should not take effect until the first of the quarter next following such order. In special cases, upon satisfactory representation, the Postmaster General might also review and readjust the salary assigned to any office as much oftener than once in two years as he might deem expedient.

Prior to this act of 1864 it will be seen that postmasters received their compensation by commission based upon each quarterly return of the amount of sales made at the particular office, but under the act of 1864, instead of compensation by commission, postmasters were to be paid under that act salaries for two years based upon the average amount of the receipts at their offices, as shown by their quarterly returns for the two years preceding the first day of July, 1864, as provided for in the act of June 22, 1854, and this salary was to be reviewed every two years.

Thus at the end of a biennial period the amount of receipts, as shown by the quarterly returns for the past two years, was taken, and upon that amount the salary for the coming two years was fixed, so that, assuming from 1864 to 1866 the amount of the quarterly receipts made a total of $2000, that sum would be fixed upon as the salary for the two years from 1866 to 1868. It was obviously an effort to make the compensation by salary equivalent to the compensation by commissions, and this was the way in which it was to be done. It is equally obvious that a failure to attain this result would frequently occur in the practical operation of the act. The amount of the compensation by salary from 1866 to 1868, for instance, fixed by a resort to the quarterly returns for the two years preceding, would, in rapidly growing communities, fail to reach the amount of compensation which the postmasters would have received had it been fixed by commissions for those years, 1866 to 1868.

The amount of the sales of stamps might have quadrupled in those years over the amount of such sales for the period from 1864 to 1866, and yet, as the compensation for the years from 1866 to 1868 was measured by the sales from 1864 to 1866, there was no relief to be had, and the postmaster in such case

would have received less salary than the amount of the compensation he would have received had he been paid by commissions on sales of stamps as under the act of 1854. Such being the obvious result of the act of 1864, the second section was amended in 1866, which amendment provided that when the salary allowed as fixed, pursuant to the provisions of the act of 1864, proved to be ten per centum less than it would have been on the basis of commissions, under the act of 1854, fixing the compensation, then in that event the Postmaster General was directed to review and readjust the salaries under the provi-- sions of that act. And even then the readjustment would not take effect until the first day of the quarter next following the order for the same, as that is the condition of the act of 1864, which is not altered in that respect by the act of 1866. It has been held that under this statute of 1866 no action could be maintained in the Court of Claims until there had been a readjustment of the salary of the petitioner for the period for which he claimed to recover. *United States* v. *McLean*, 95 U. S. 750.

The quarterly returns mentioned in the act of 1866 do not refer to any one quarterly return during the biennial term. The question arose in *McLean* v. *Vilas*, 124 U. S. 86, when, referring to the amendment of 1866 to the act of 1864, the court, through Mr. Justice Miller, said: "What quarterly returns are here meant, as showing that the salary is ten per cent less than the commissions under the act of 1854? The argument of counsel is, that when one quarterly return shall show this condition of affairs, the Postmaster General, on the request of the postmaster, must make a readjustment, but such is not the language of the statute. The expression used is 'when the quarterly returns' shall show this, and inasmuch as the law had already established that readjustments must be made on the basis of the quarterly returns for two years, it is reasonable to suppose that that was the meaning of Congress in this proviso."

Under such a construction, the readjustment could not be had until eight quarterly returns of the biennial period had been made, so that it would appear therefrom that the salary allowed during that term was at least ten per centum less than

it would have been, if fixed on the basis of commissions under the act of 1854, in which case the Postmaster General was directed to review and readjust salaries under the provisions of said section, but the change was not to take effect until the first day of the quarter next following such order of the Postmaster General. Then comes the act of 1883, which also provides for a case for readjustment of salary where sworn returns of receipts and business have been made, or where quarterly returns, in conformity to the then existing regulations, have been made, showing that the salary allowed was ten per centum less than it would have been upon the basis of commissions under the act of 1854. In such case the Postmaster General was authorized and directed to readjust those salaries in accordance with the mode prescribed in section 8 of the act of June 12, 1866, already referred to.

The sworn quarterly returns referred to in the act of 1883 are those contained in the biennial period, and the act does not refer to one return alone, any more than did the act of 1866. Having stated the circumstances in which a readjustment could be had, the act of 1883 proceeded to state from what period such readjustment should take effect, and it stated that it was " to date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business or quarterly returns were made." This language is plain and unambiguous, and the court is bound by its terms. The readjustment cannot take effect in the same term for which the sworn returns were reviewed. It is postponed to the beginning of the next quarter.

It is said that as thus construed the statute leads in many cases to great injustice, and hence such construction should not be adopted. The difficulty is that any other construction violates the clear directions of the law, and although the result may be to withhold its benefits from some who might be regarded as otherwise entitled to it, yet we cannot for that reason alter its terms so as to include them, and thus ourselves enact instead of construing the law.

In *United States* v. *Verdier*, 164 U. S. 213, 219, it was held that the act of 1883 created an indebtedness voluntarily assumed

by the Government in regard to those who claimed under its provisions. It rested entirely with Congress to say who should have its benefits and how the same should be arrived at, and from what date the readjustment should take effect, and as Congress has plainly stated the date there is nothing for the court to do but follow the clear direction of the statute. If Congress had intended to provide for the readjustment taking effect at the commencement of a biennial term subsequent to that in which the quarterly returns were made upon which the compensation was fixed, we are at a loss to think of what language it could use which would more certainly and specifically prove that intention than does the language actually used in this statute.

The method of reviewing and readjusting the salaries of post-masters under the act of 1883 with reference to the acts of 1864 and 1866, pursued by the Post Office Department, by which the readjustments based upon the quarterly returns have been made prospectively for the next biennial term thereafter, was approved by Congress as a correct administration of the act of March 3, 1883, and the readjustments which had been made under that act and in that method by the Department, were ratified as a correct disposition of the claims which had been considered and disposed of, and Congress enacted that in considering all claims not yet readjusted the same method thus approved by it should be pursued, and it directed that any and every different method of readjustment of salaries during the period between 1864 and 1874 should be prohibited. 24 Stat. 256, 307, sec. 8 ; act approved August 4, 1886. When this act was passed the salary of the petitioner had not been readjusted.

While the declaration of Congress in the act of 1886, approving the construction which had been put upon the act of 1883 by the Post Office Department, and ratifying its method of reviewing and readjusting salaries under that act, could have no binding force upon the courts as to the proper construction of that act in cases of salaries already readjusted, yet its direction, " that in considering all claims not yet readjusted, the same method shall be pursued which is hereby approved ; and any and every different method of readjustment of salaries of

such postmasters and late postmasters during the period between July 1, 1864, and July 1, 1874, than is herein approved, is hereby prohibited," is a valid legislative enactment and must be followed by the courts. The readjustment of the salary of petitioner has not been according to this direction.

Construing the acts of 1883 and 1886 as we think their terms require, the judgment of the Court of Claims is erroneous, and must be reversed and the case remanded to that court with instructions to enter a judgment in conformity to the directions of those statutes and the opinion of this court.

We feel called upon to say that the charges of misconduct, maladministration and fraud against the officers of the Post Office Department, so freely scattered through the pages of the briefs of counsel for appellee, are entirely unwarranted by anything contained in the record before us, and ought not to have been made.

*Reversed.*

Mr. Justice McKenna did not sit in this case and took no part in its decision.