234 S.W.2d 293 (1950)
ILARI et al.
v.
EWING et al.
Court of Appeals of Kentucky.
May 30, 1950.
Rehearing Denied December 15, 1950.
Woodward, Hobson & Fulton, Louisville, Steinfeld & Steinfeld, Louisville, Woodward, Bartlett, Hobson & McCarroll, Owensboro, for appellants.
T. E. Sandidge, Owensboro, Wilson & Wilson, Owensboro, for appellees.
HELM, Justice.
This is an appeal from a judgment of the Daviess Circuit Court which refused to set aside a deed from the trustees under the will of S. R. Ewing, and denied other relief sought by the appellants. Appellants contend that: (1) The deed to the "river farm" executed by the trustees and executors must be set aside because by the terms of the will they alone were not given power to sell; (2) assuming that the trustees had the power to sell, they were without authority to execute gas and oil leases on this property; and (3) the trustees did not act in good faith in their attempt to sell the farm.
S. R. Ewing, farmer and banker, resident of Owensboro, died testate March 23, 1942. Mr. Ewing left the following surviving children: S. R. Ewing, Jr., Mary Ewing, Katharine Leeper, Ruth Mason, Bessie Neeley, and Robert G. Ewing, and the following grandchildren: Catherine Ilari, John Wimsatt, Louise Wimsatt, and Genevive Wimsatt.
After devising a sum to the St. Stephens Catholic Cathedral at Owensboro, and after providing for the payment of funeral expenses and just debts, Item 2 of his will provided: "* * * I hereby will and bequeath all of my property, real, personal and mixed, to my daughters, Mary Ewing and Bessie Neeley, and son, S. R. Ewing, Jr., to be held by them in trust for a period of ten years after my death * * *." under named terms and conditions. He provided that his trustees have full power to sell his "home on Locust Street" and his farm "situated at Stanley." By clause D of Item 2 he provided: "My estate shall be divided into forty-four (44) shares; *294 and to my four daughters, Mary Ewing, Catherine Leeper, Ruth Mason and Bessie Neeley, I hereby will and bequeath eight (8) shares each; to my son, S. R. Ewing, Jr., four (4) shares; four (4) shares to be held in trust by the trustees hereinafter set out for the benefit and use of Robert G. Ewing; and four (4) shares to be held in trust as hereinafter set out for the children of my deceased daughter, Margaret Wimsatt, towit: Mrs. Catherine Ilari, John Wimsatt, Louise Wimsatt and Genevieve Wimsatt, one (1) share each."
Clause E of Item 2 provides: "I further will and direct that no part of my farm, except Stanley farm bought from Thomas, shall be sold within ten years after my death, unless the holders of sixty (60) per cent of the shares above provided for shall agree to such sale, * * *. If any sale is made of my River farm, the holders of sixty (60) per cent of the shares in my estate may evidence their consent and approval of such sale by joining with the executors (or executrix or executor) in the deed conveying the land sold; and any such deed properly executed by said holders of sixty (60) per cent of the shares in my estate and by my said executors (or executrix or executor) shall convey good title to the land so sold * * *."
The executors named were appointed as trustees for Robert G. Ewing, and as trustees for the children of Margaret Wimsatt. Item 5 provides: "If any of the above named devisees, except the children of Margaret Wimsatt, shall die leaving issue before the trust herein established terminates, that issue shall take the interest or shares which said devisees would have taken if then living; but if any one of said devisees, other than the children of said Margaret Wimsatt, shall die before said time, without leaving issue, then the interest or shares given to said devisee above shall be divided among the other devisees herein in proportion to the shares given them above. * * *"
Ruth Mason, distributee of 8 shares, and Robert G. Ewing, distributee of 4 shares, died in 1946 without surviving issue. The surviving shareholders were the original distributees of 32 shares and were entitled to participate in the redistribution of the 12 shares as above set out. Mary Ewing, the owner of 8 shares originally, was entitled to 8/32 of the 12 shares, or 3 shares, giving her a total of 11 shares. Likewise, Katharine Leeper and Bessie Neeley were entitled to 3 of the 12 shares, giving them 11 shares each in the estate. S. R. Ewing, Jr., owner of 4 shares originally, was entitled to 4/32 of the 12 shares, or 1½ shares, giving him a total of 5½ shares; and, likewise, the grandchildren were entitled to 4/32 of the 12 shares, or 1½ shares, giving them a total of 5½ shares in trust. Mary Ewing, Bessie Neeley, and S. R. Ewing, Jr., became the owners of 27½ shares in the estate, more than 60 per cent of the 44 shares.
Appellants, Catherine Ilari, Louise Wimsatt Holloway, and Katharine Ewing Leeper contend that the river farm might be sold only when 60 per cent of those named as original shareholders consented to the sale. But two of the original shareholders had died and their shares, under the will, passed to the other holders as above set out. After the death of the other two heirs, Mary Ewing, Bessie Neeley, and S. R. Ewing, Jr., became the holders of more than 60 per cent of the entire 44 shares provided for in the will. Under the will it is clear that the "holders of 60 per cent of the shares in my estate" had the power to sell the land in question, and "convey good title to the land so sold."
By deed of February 19, 1947, S. R. Ewing, Jr., Bessie Neeley, and Mary Ewing conveyed what is referred to in the record as the S. R. Ewing 1000-acre river farm to J. W. Hicks, Trustee, of Jefferson County, for $100,000. The deed was signed and executed by S. R. Ewing, Jr., Bessie Neeley, and Mary Ewing as executors and trustees under the will, and "individually." Clearly the holders of more than 60 per cent of the 44 shares provided by the will evidenced their consent and approval of the sale by joining with those named as executors and trustees in the deed conveying the land sold. We are of the opinion that the deed was duly executed and is *295 effective under the provisions of Mr. Ewing's will.
Appellants maintain that $100,000 was not a fair price for the farm, and that there was not a bona fide sale of it. The river farm is referred to in the will as containing "about 1000 acres." It consists of land on the south bank of the Ohio River, five or six miles west of Owensboro, and includes a nearby island in the river. The island appears to have some 125 acres of tillable land, leaving about 875 acres south of the river. From the record it appears that the 1937 flood overflowed much of the farm; that the flood deposited white sand from 8 inches to 3½ feet in depth over a portion of the farm along the river bank. It is also stated that that part of the farm is covered with Johnson grass, and that because of the sand and Johnson grass that part of the farm is practically useless for cultivation. Through the farm is what is referred to as the "cowhide slough" containing about 60 acres. It overflows in case of heavy rains, and because of this it is practically waste land. About 80 acres of the farm is woodland, covered with undergrowth, and is not tillable. J. W. Westdecker, who had been the manager of this farm for some 27 years, estimates that "200 acres up and down the river is practically ruined by white sand and Johnson grass." That is, that it cannot be cultivated profitably. Appellants in their brief say that the river farm, including the island, contained approximately 916 acres.
W. J. Foster, farmer and former president of the Farm Bureau of Daviess County, testifying for appellants, valued the land, excluding the hill land and the land covered with Johnson grass and white sand, at $150 an acre. On cross-examination, when asked whether or not $100,000 was a fair price for the farm, he answered that at the time it was sold he thought "that was mighty close to a fair market value." Charles Leeper, husband of appellant Katharine Leeper, stated that if the farm were subdivided into smaller farms "it should bring around $150,000." S. R. Ewing, Jr., testified that after a careful investigation he was of the opinion that $100,000 was a fair price and that he was satisfied to sell at that price. William Barron, farmer and tobacco dealer, estimated that 300 acres of the farm was covered with Johnson grass and white sand. He fixed the fair market value of the farm at $100 per acre. C. H. Sublett estimated that 200 acres of the farm "is covered with sand and Johnson grass." In his opinion the land was worth $90 an acre. Richard L. O'Brien, farmer and owner of some 2000 acres in Daviess County, testified that he bid $75,000 for the farm. James C. Ellis, present owner of the farm, estimates the tillable acreage at around 600 to 650 acres. He testified, "I gave $100,000 for it * * * I think that is all it is worth."
There is considerable variation in the estimates fixed by apparently disinterested witnesses as to the value of the farm. The owners and holders of more than 60 per cent of the farm, who were acting as trustees and executors, employed Joe Vittitow, real estate agent of Owensboro, to sell the farm. After advertising the farm and contacting possible buyers, the best offer he was able to obtain was $100,000. From a careful examination of all the testimony we are unable to say that $100,000 was not a fair price for the farm.
But it is said the sale was not in good faith. The deed was made to J. W. Hicks, Trustee. It appears that Mr. Hicks was acting for James C. Ellis, who was the buyer and who paid the purchase price. Mr. Ellis, asked as to why he purchased the farm in this manner, stated that he understood some of the heirs did not wish him to have the farm, and also that he preferred to have all possible buyers placed on an equal basis. From the record it appears that Mr. Ellis has extensive holdings in that part of the state, and is President of the Citizens State Bank of Owensboro. The record discloses that Bessie Neeley is in the insurance business at Owensboro, and that Mr. Ellis places a considerable amount of his insurance with her agency; that Miss Mary Ewing and Mr. Ellis are friends; that Mr. Vittitow is a director in Mr. Ellis' bank, and that Mr. Ellis places a part of his insurance with him. From the record it appears that S. R. Ewing was a *296 successful farmer and business man; that his son, S. R. Ewing, Jr., is likewise a successful farmer.
Mr. Ewing, in his will, in appointing his three children as executors and trustees under his will, said: "I have full faith in my said executors and trustees and, therefore, I have not required that they execute bond to discharge their trust." Here the three executors and trustees were acting not only for the other devisees but were themselves the owners of more than 60 per cent of the property conveyed. They were acting in their own behalf, conveying what was a large part of the property derived by them under their father's will. In making this conveyance we believe they were acting in good faith and did what they believed to be in the best interest of themselves and the other devisees.
The record discloses that Mary Ewing, Bessie Neeley, and S. R. Ewing, Jr., executed an oil and gas lease on the river farm to Mr. Morrison, and that they also executed an oil and gas lease to Mr. Brown. It further appears that Mr. J. C. Ellis became the owner of these oil and gas leases. It is urged that Mrs. Neeley, Miss Ewing, and Mr. Ewing were without power to execute the oil and gas leases. As we have shown, they were the owners and holders of 60 per cent of the shares in their father's estate, including the river farm, and in accordance with the provisions of their father's will had the power to sell the river farm. The execution of the oil and gas leases was the conveyance of a lesser estate than the fee simple. Mills v. Mills, 275 Ky. 431, 121 S.W.2d 962. When it is determined that they had the power to sell the fee simple, then it follows that they were empowered to convey a lesser estate, or interest in the land. Sammons v. Warfield Natural Gas Co., 304 Ky. 548, 201 S.W.2d 719.
The Chancellor heard the witnesses in open court. After hearing all the testimony he dismissed the petition of appellants Catherine Ilari and Louise Wimsatt Holloway, and the intervening petition of appellant Katharine Ewing Leeper. A judgment of the Chancellor on conflicting evidence will not be disturbed unless clearly erroneous or against the preponderance of the evidence. Here we find no reason to disturb the decree of the Chancellor.
The judgment is affirmed.