Henry B. WALKER, Jr., Trustee, et al., Plaintiffs,

v.

FELMONT OIL CORPORATION et al., Defendants.

Civ. No. 600.

United States District Court
W. D. Kentucky, at Owensboro.

Dec. 16, 1955.

586

Walker & Walker, Evansville, Ind., Clarence Bartlett, Owensboro, Ky., for plaintiffs.

Byron, Sandidge & Holbrook, Owensboro, Ky., Walter Davison, Tulsa, Okl., Fred W. File, Mattoon, Ill., L. Allen Rhoads, Henderson County Atty., Henderson, Ky., for defendants Carter Oil and Felmont Oil Companies.

King & Craig, Henderson, Ky., for Olen D. Sharp.

M. B. Holifield, Asst. Atty. Gen., for Kentucky State Property & Buildings Commission and Commonwealth of Kentucky.

Funk, Chancellor & Marshall, Frankfort, Ky., for Ohio River Oil Co.

BROOKS, District Judge.

This declaratory judgment action involves the authority to execute oil and gas leases for that portion of the bed of the Ohio River that lies north of the thread of the stream. There are three groups of parties holding conflicting leases, each claiming the exclusive right to extract oil and gas from the river bed.

Plaintiffs Henry B. Walker, Jr., as successor trustee, et al., and their lessees claim the oil and gas rights by virtue of certain land patents purporting to convey title to portions of the river bed. These parties are hereinafter referred to as the Patentees.

The defendants, Henderson County, Kentucky, and its lessees, base their claim on leases from Henderson County, Kentucky. They are referred to herein as Henderson County.

Defendants, Commonwealth of Kentucky, its lessee, Ohio River Oil Company, Inc., and its assignee, Olen D. Sharp, base their claim on a lease from the State Property and Buildings Commission of the Commonwealth of Kentucky. This group of litigants is referred to herein as the Commonwealth.

As a result of a pretrial conference, certain matters were reserved for later adjudication and the case submitted on the following three issues of law:

1. Is that part of the bed of the Ohio River lying between the thread of the stream and the northern low water line capable of appropriation under the patent procedure as outlined in KRS 56.190 to 56.320?

2. Does Henderson County, Kentucky, a county adjacent to the Ohio River, have authority under KRS 56.190 to 56.320 to lease the oil and gas lying beneath that part of the bed of the Ohio River which is between the thread of the stream and the northern low water line thereof?

3. Does the State Property and Buildings Commission of the Commonwealth of Kentucky have authority under KRS 56.450 to KRS 56.550 inclusive to grant a valid lease disposing of the oil and gas under that portion of the bed of the Ohio River lying between the thread of the stream and the northern low water line thereof?

■ It is well established that the Ohio River is within the territorial confines of Kentucky and that the northern boundary of Kentucky is the low-water mark on the north bank of the river. Handly's Lessee v. Anthony, 1820, 5 Wheat. 374, 5 L.Ed. 113; Louisville Bridge Co. v. City of Louisville, 1883, 81 Ky. 189; State of Indiana v. State of Kentucky, 1890, 136 U.S. 479, 10 S.Ct. 1051, 34 L.Ed. 329.

■ The law is also well settled that the title to the southern half of the river bed from the middle of the river to the Kentucky shore is vested in the riparian land owners in Kentucky, and title to the bed of the Ohio River from the thread of the stream to the low-water mark on the northern shore is in the Commonwealth of Kentucky. Handly's Lessee v. Anthony; Louisville Bridge Co. v. City of Louisville; State of Indiana v. State of Kentucky, all supra; Berry v. Snyder, 1867, 66 Ky. 266; Ware v. Hager, 1907, 126 Ky. 324, 103 S.W. 283; Bedford-Nugent Co. v. Herndon, 1922, 196 Ky. 477, 244 S.W. 908; Willis v. Boyd, 1928, 224 Ky. 732, 7 S.W.2d 216; City of Covington v. State Tax Commission, 1929, 231 Ky. 606, 21 S.W.2d 1010; Louisville Sand

& Gravel Co. v. Ralston, Ky.1954, 266 S.W.2d 119.

All parties to this action concede the sovereign power of Kentucky to permit the development of oil and gas deposits in the northern half of the bed of the Ohio. They differ sharply on the interpretation and construction of the various legislative acts that are advanced as authority for their development.

### I

In their complaint the Patentees allege complete compliance with the laws of Kentucky providing for the appropriation of vacant and unappropriated lands and assert the validity of certain patents issued in 1938 to portions of the Ohio River bed north of the thread of the stream. These patents, signed by the Governor and Secretary of State and bearing the Seal of the Commonwealth of Kentucky, are filed with the record. The attack on the validity of these patents centers on the contention that the patent statutes as construed by the Court of Appeals of Kentucky apply only to uplands and do not permit the acquisition of the northern half of the bed of the Ohio River by patent proceedings.

The question of whether or not the northern bed of the Ohio River is subject to patent was directly considered by the Court of Appeals of Kentucky in 1907 in the case of Ware v. Hager, 126 Ky. 324, 103 S.W. 283. Chapter 136 of the Acts of 1893 of the Kentucky Legislature, being Sections 4702–4705 of the Kentucky Statutes, Carroll's First Edition, 1903, was the law then in effect dealing with vacant and unappropriated land. The court construed this Act of 1893 as not authorizing the acquisition of the northern bed of the river by patent. In so holding the court said:

"While the state owns the land to the northern shore of the river, we do not think it has ever provided for the taking up of the river bed between the thread of the stream and the northern shore as vacant land. The proceeding in question was instituted under chapter 127,

Ky.St.1903. Section 4702, which is the first section of that chapter, provides that each county in the state shall have the right to dispose of the unappropriated lands lying therein not otherwise provided for in the manner thereinafter directed. Section 4703 provides that an actual settler on any vacant or unappropriated land shall have a pre-emption right to any number of acres, not exceeding 100. It also provides that any person who wishes to appropriate any vacant or unappropriated land may obtain an order of court authorizing him to enter and survey any number of acres, not more than 200. Section 4704 provides that the surveyor shall survey the entries in the order of time in which they are made, bounding the same by plainly marked trees, stones, or stakes, and noting where they bind on a water course or a marked line of another survey. In enacting these provisions, we cannot believe that the Legislature had in mind the taking up of the bed of the Ohio river between the thread of the stream and the northern shore. Such a survey could not be marked by stones or stakes or plainly marked trees. There could be no actual settlers on such land. While we do not doubt the power of the Legislature to provide for the issuing of patents for the bed of the Ohio river north of the thread of the stream, so that the sand or minerals which may be on or under this land may be appropriated, we do not think it has yet done so".

 This opinion has not been overruled or modified, but in 1926 the patent statutes interpreted by it were amended. However, the 1926 Amendment did not disturb Sections 4703 and 4704 which were the basis of the court's decision. Section 4703 providing that an actual settler on vacant and unappropriated land shall have a pre-emption right to 100 acres and that any person may enter and survey up to 200 acres of vacant land

was re-enacted. Section 4704 providing the survey shall be marked "by plainly marked trees, stones or stakes, noting where it binds on a watercourse, or the marked line of another survey, giving names", was also re-enacted. The re-enactment by a legislature of a statute interpreted by the highest court of the State constitutes an adoption of the statute as construed. Chatterson v. City of Louisville, 145 Ky. 485, 140 S.W. 647; Rose v. Turner, 301 Ky. 272, 191 S.W.2d 397; Button v. Hikes, 296 Ky. 163, 176 S.W.2d 112, 150 A.L.R. 779.

The Patentees advance the further argument that Section I, Sec. 4702, of the 1926 Amendment repudiates the Ware case by declaring for the first time that the bed of the river north of the thread of the stream was "vacant and unappropriated property", and that because of this declaration this property became subject to patent. This argument has also been answered. In Willis v. Boyd, 1928, 224 Ky. 732, 7 S.W.2d 216, 218, a case involving a sand and gravel lease of the north bed of the Ohio River, the 1926 Amendment was considered, and the court stated:

"Assuming the act to be valid, it will be observed that section 4702 does not give the counties unlimited disposition of vacant lands. But such right is to be exercised 'in the manner hereinafter directed,' and while the mainland may be patented and sold in 'the manner provided' therefor and made applicable thereto, the power of the disposition of the river bed was restricted to the letting or leasing for county purposes upon such terms and conditions as to it may appear beneficial to said county."

Also see Board of Councilmen of City of Frankfort v. Pattie, 227 Ky. 343, 12 S.W. 2d 1108.

■ The Patentees also contend that every grant or patent of land is presumed to be valid and to have issued regularly and is prima facie evidence of title. For their authority they rely on Wallace v. Maxwell, 24 Ky. 447, and Poplar Mountain Coal Co. v. Dick, 7 Ky.Op. 420. But a study of those cases discloses that the presumption that exists is only that the officers charged with issuing a patent properly perform their duties. As stated in Wallace v. Maxwell, supra, "It is admitted that the legal presumption is, that the surveyor, register, Governor and Secretary of State, have done their duty, in regard to the several Acts, necessary to be performed by them, in granting lands; and therefore surveys and patents should always be received as prima facie evidence of correctness, but further we cannot go." The patents disclose on their face that they cover part of the bed of the Ohio River, and it follows that the physical procedural steps required by the Statutes could not have been taken. The State cannot be bound by the unauthorized acts of its officers in issuing patents to land in disregard of the law declared in Ware v. Hager, supra. "The Commonwealth is never bound by the act of any of its officers beyond the scope of their authority". Allin v. County Board of Education, 148 Ky. 746, 147 S.W. 920, 922; United States Fidelity & Guaranty Co. v. Commonwealth, 104 S.W. 1029, 31 Ky.Law Rep. 1179; Leslie County v. Keith, 227 Ky. 663, 13 S.W.2d 1012; Juett v. Town of Williamstown, 248 Ky. 235, 58 S.W.2d 411.

■ On the basis of the holding in Ware v. Hager which has not been overruled or modified and which has been given legislative sanction by the re-enactment of the sections of the law upon which the decision rests, and for the other reasons given herein, the patents involved in this action are invalid.

## II

In 1953 Henderson County executed oil and gas leases to the defendants referred to herein as Henderson County. The basis of Henderson County's asserted right to make these leases in KRS 56.220 (1942) which provides as follows:

"*Lands in the Ohio River bed.* All that portion of the bed of the Ohio River, lying north of the thread of

the stream, except accretions to islands privately owned, is declared to be vacant and unappropriated land, and the county court of each county bordering on the Ohio River may use or lease the river bed for county purposes, upon such terms and conditions as to it seem beneficial to the county. Any contract of leasing made by any such county court of such river bed for any sand and gravel rights for or on behalf of the county, conveys full right and title to the lessee to the exclusive use of all sand and gravel deposits in the river bed to the extent embraced in the lease."

This statute is composed of two sentences. In the first sentence it is stated without apparent limitation that the counties "may use or lease the river bed for county purposes". In the second sentence reference is made solely to sand and gravel, and the lessees of sand and gravel rights are specifically given "full right and title" to the "exclusive use of all sand and grave deposits in the river bed to the extent embraced in the lease."

Henderson County argues that the statute is a clear and simply worded enactment empowering the counties of Kentucky that border on the Ohio River to use or lease the northern river bed for any county purpose. And it claims that the broad grant of power contained in the first sentence of the statute authorizes leases for the extraction of oil and gas and that the second and final sentence of the Act, which mentions only leases for sand and gravel, does not limit or qualify the general grant of power given in the first division of the statute but is merely "the application of the power granted in the first sentence over a general class to a particular member of the class."

On the other hand it is the position of the Commonwealth that the right to lease granted in the first sentence is only a power to lease the surface of the river bed for a limited period and that lessees are not authorized under the general language of the first sentence to dispose of the real estate or any part thereof, such as minerals on or under the surface of the river bed. It contends that the second sentence alone permits the taking of any part of the real estate and then only in the form of sand and gravel.

■ The first issue to be decided is whether or not the meaning and legislative purpose of the Act can be determined from the words of the statute itself. If the Act is unambiguous and its meaning is clear and easily understood, the court is not authorized to go outside the language of the statute to construe it. United States v. Ewing, 184 U.S. 140, 22 S.Ct. 480, 46 L.Ed. 471; Barr v. Dorman, 249 Ky. 367, 60 S.W.2d 939; Reed v. Greene, Ky., 243 S.W.2d 892; Department of Revenue v. McIlvain, 302 Ky. 558, 195 S.W.2d 63; Mills v. City of Barbourville, 273 Ky. 490, 117 S.W.2d 187; City of Covington v. Cincinnati, C. & R. Ry. Co., 144 Ky. 646, 139 S.W. 854. But an ambiguity may exist in a statute where the words used are definite and simple if from a consideration of the statute in its entirety doubt arises as to its scope and application. As stated in Coosaw Mining Co. v. State of South Carolina, ex rel. Tillman, 144 U.S. 550, 12 S.Ct. 689, 692, 36 L.Ed. 537, "The ambiguity here referred to is not simply that arising from the meaning of particular words, but such as may arise, in respect to the general scope and meaning of a statute".

■ The words used in the instant statute are definite and simple, but its two sentences, one giving a seemingly unrestricted grant of power to lease and the other limiting its application to leases of sand and gravel give rise to a serious doubt as to the general scope and meaning of the statute.

■ This determination that the statute is ambiguous and of doubtful meaning is supported by resort to one of the rules of construction. If Henderson County's interpretation of the first sentence of the statute is accepted that it empowers the counties to make leases of all kinds, it is obvious that the second

sentence of the Act is superfluous. Certainly the declaration of the Legislature contained in the second sentence authorizing the counties to execute sand and gravel leases would add nothing to the meaning of the statute if this power was already granted in the first sentence of the Act. To consider the sand and gravel sentence as superfluous, however, would be contrary to the established rule that no provision of a statute susceptible of meaning is to be ignored. As stated in Ex parte Public National Bank, 278 U.S. 101, 49 S.Ct. 43, 44, 73 L.Ed. 202, "No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that 'significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgement, § 2, it was said that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." ' " Citing Washington Market Company v. Hoffman, 101 U.S. 112, 115, 25 L.Ed. 782.

■ Being unable to resolve the ambiguity from a consideration of the wording of the statute it is proper to refer to other canons of statutory interpretation for assistance in ascertaining the true legislative intent. Resort may be had to the history of the statute and to the acts of the General Assembly from which it was derived. May v. Clay-Gentry-Graves Tobacco Warehouse Co., 284 Ky. 502, 145 S.W.2d 84; Thieman v. Hancock, 296 Ky. 223, 176 S.W.2d 418; KRS 446.130. The preamble of an act may also be considered. Jones v. City of Paducah, 283 Ky. 628, 142 S.W.2d 365; Nichols v. Wells, 2 Ky. 255; Beard v. Rowan, 34 U.S. 301, 9 L.Ed. 135; Louisville Memorial Gardens, Inc., v. Carpenter, Ky., 261 S.W.2d 627.

The present land patent laws of Kentucky as found in KRS 56.190–56.240 are derived from Chapter 136 of the Acts of 1893 with the 1926 Amendment. The preamble and the emergency clause (Section 6) of the 1926 Amendment are as follows:

*Preamble:*

"Whereas, there are valuable sand and gravel deposits in the bed of the Ohio River north of the thread of the stream, and,

"Whereas, said sand and gravel deposits belong to the State of Kentucky and to the counties of said state bordering on said river where said sand and gravel deposits are located, and,

"Whereas, said counties are losing the benefits of said sand and gravel deposits because of there being no law at the present time allowing said counties to lease or let said sand and gravel deposits for development".

*Emergency Clause:*

"§ 6. Whereas, many counties in this Commonwealth are losing considerable revenue by reason of various parties, firms and corporations pumping and taking sand and gravel from the bed of the Ohio River, an emergency is hereby declared to exist and this act shall take effect from and after its approval by the Governor."

Consideration of this preamble and emergency clause resolves the existing ambiguity and requires the conclusion that the true purpose of the Legislature was to restrict the power of the counties bordering on the Ohio River to the leasing of the surface of the north half of the river bed with the one named exception of leases for removal of sand and gravel deposits.

■ In support of this conclusion is the established law of Kentucky that a lease of minerals underlying the surface of the land, since it is a depletion lease, is treated as a sale of the real estate, and persons holding an inferior estate less than an absolute fee simple cannot execute mineral leases without express authority. Mills v. Mills, 275 Ky. 431, 121 S.W.2d 962; Dempsey v. Diederich, 313 Ky. 865, 233 S.W.2d 976; Crain v. West, 191 Ky. 1, 229 S.W. 51; Foxwell v. Jus-

tice, 191 Ky. 749, 231 S.W. 509; McCoy v. Ferguson, 172 Ky. 235, 189 S.W. 191; York v. Warren Oil & Gas Co., 191 Ky. 157, 229 S.W. 114. The statute KRS 56.220 does not vest a fee simple title to the river bed in the bordering counties. It merely grants a general power to "use or lease" and does not specifically confer authority to dispose of portions of real estate other than the express power to extract sand and gravel from the river bed. A county derives all of its power from the sovereign state and "Powers not conferred are just as plainly prohibited * * *." Bruner v. Jefferson County Fiscal Court, 239 Ky. 613, 40 S.W.2d 271, 273; Edwards v. Logan County, 244 Ky. 296, 50 S.W.2d 83. It is also an admitted fact that when this statute was enacted oil and gas had not been discovered in the river bed. The existence of oil and gas deposits being unknown, it follows that the Legislature could have had no intention whatsoever one way or the other with respect to authorizing leases for its development and extraction.

For the foregoing reasons Henderson County has no authority to lease the oil and gas lying beneath that part of the bed of the Ohio River which is between the thread of the stream and the low-water mark on the northern shore.

### III

The claim of the Commonwealth is based on the lease of the river bed granted by the State Property and Buildings Commission of the Commonwealth of Kentucky. In 1949 the Kentucky Legislature enacted the State Property and Buildings Commission Act, being KRS 56.440 through 56.550. The Act creates an independent agency of the State composed of the Governor, Lieutenant Governor, Attorney General, Commissioner of Finance and the Commissioner of Revenue and gives to the Commission, among other powers, the authority:

"56.460 * * * (3) To purchase, lease or rent such real estate as the commission may find to be necessary for use by the state or by any state agency, upon such terms and conditions and for such consideration as may appear to the commission to be fair and reasonable.

"(4) To sell and convey any real estate owned by the state or by any state agency, found by the commission not to be needed for public use or to have become unsuitable for such use, except that this power shall not extend to real estate as to which a particular state agency has the power, as recognized in subsection (2) of KRS 56.500, to sell or convey with the approval of the commission.

* * * * * *

"(7) To lease any real estate or any part thereof, now owned or hereafter acquired by the state or by any state agency, to any person not a state agency, when the commission finds as a matter of fact that the real estate or any part thereof is not needed for state purposes, except that this power shall not extend to any real estate as to which a particular state agency has power, as recognized in subsection (2) of KRS 56.500, to lease with the approval of the commission. Any such lease shall be upon such terms and conditions and for such consideration as the commission may prescribe, and shall be made in the name of the Commonwealth of Kentucky, and shall be signed by the chairman of the commission and lodged for record in the office of the Secretary of State."

By this enactment the Legislature has placed in the hands of this Commission complete power of disposal over the lands owned by the State "found by the commission not to be needed for public use", with the exceptions contained in Subsection (2) of KRS 56.500 which are not applicable here. The statute grants broad powers, but it is not arbitrary and its constitutionality has been upheld. Preston v. Clements, 313 Ky. 479, 232 S.W.2d 85.

The argument is advanced that this is only a housekeeping agency and that it does not purport to deal with "vacant and unappropriated lands." In support of this argument the Governor's opening and closing remarks to the 1948 session of the Legislature are quoted and the history of the Act is explored, but the language of this statute, unlike that of KRS 56.220, is clear and unambiguous and it must be applied and not interpreted. (See cases cited in Part II hereof.)

 It is also contended that the public policy of the State requires that the proceeds from the sale of vacant and unappropriated lands should go to the counties and not to the State treasury, since from 1835 the Acts of the General Assembly have provided that the proceeds of "vacant and unappropriated lands" be used for county purposes. It has been decided herein (Section I) that the unappropriated land in the Ohio River bed north of the thread of the stream is not subject to acquisition by patent. In any event the public policy of the State is determined by its constitution and statutes and is what the Legislature announces it to be as long as it is not contrary to constitutional provisions. Eversole v. Eversole, 169 Ky. 793, 185 S.W. 487, L.R.A.1916E, 593; Gathright v. H. M. Byllesby & Co., 154 Ky. 106, 157 S.W. 45. It is for the Legislature to say whether proceeds from the sale of the natural resources of Kentucky shall be for the benefit of the State at large or for particular subdivisions of the Commonwealth.

The language of the statute is clear and unambiguous. It authorizes the Commission to lease and sell real property owned by the State, and the power to sell real property includes the power to execute oil and gas leases. Ilari v. Ewing, 314 Ky. 182, 234 S.W.2d 293; Sammons v. Warfield Natural Gas Co., 304 Ky. 548, 201 S.W.2d 719.

For the stated reasons, the State Property and Buildings Commission of the Commonwealth of Kentucky has authority to grant a valid lease disposing of the oil and gas under that portion of the bed of the Ohio River lying north of the thread of the stream.

Counsel for the Commonwealth will submit appropriate order on notice.